# 13-3945-cr

*To Be Argued By*
*Jesse M. Siegel*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
———————————————————

**UNITED STATES OF AMERICA,**

*Appellee,*

**-against-**

**LACEY SCOTT,**

*Defendant-Appellant.*

———————————————————

**ON APPEAL FROM THE UNITED STATES DISTRICT**
**COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**
———————————————————

**BRIEF AND APPENDIX FOR APPELLANT LACEY SCOTT**
———————————————————

Jesse M. Siegel, Esq.
Law Office of Jesse M. Siegel
233 Broadway, Suite 707
New York, NY 10279
(212) 207-9009

*Attorney for Appellant*
*Lacey Scott*

# TABLE OF CONTENTS

**Page**

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION….1

QUESTION PRESENTED…………………………………….…….…..…2

STATEMENT OF THE CASE…………………………….…..…..……...2

STATEMENT OF FACTS……………………………………………....3

    Background…………………………………………………………3
    The Charges……………………………………………………4
    The Hearing……………………………………………………...5
    The Plea Agreement..……………………………………………5
    The Presentence Report……………………………...............7
    The Sentencing Hearing …………………………………………8

ARGUMENT……………………………………………………...11

THE SENTENCE IMPOSED BY THE DISTRICT
COURT WAS PROCEDURALLY UNREASONABLE…………………………11

    Introduction ………………………………………………..11
    Applicable Law …………………………………………12
    The Sentence was Procedurally Unreasonable ……………………15

CONCLUSION ……………………………………………………..17

*i*

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985) …………………………..14

*Gall v. United States*, 552 U.S. 38 (2007) …………………………………………..13

*Kimbrough v. United States*, 552 U.S. 85 (2007 ………………………………..13

*Rita v. United States*, 551 U.S. 338 (2007) …………………………………………...13

*United States v. Booker*, 543 U.S. 220 (2005) ……………………………………12, 13

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) ………………………13, 14

*United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005) ………………………12, 13

*United States v. Fernandez*, 443 F.3d 19 (2d Cir. 2006) ………………………..12

*United States v. Rattoballi*, 452 F.3d 127 (2d Cir. 2006) …………………….12, 13

*United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005) …………………13

*United States v. Zagari*, 111 F.3d 307, 323 (2d Cir. 1997) ……………………..14

**Statutes and Sentencing Guidelines**

18 U.S.C. § 3742 ……………………………………………………………..14

U.S.S.G. § 4A1.1(a) ……………………………………………………………14

U.S.S.G. § 4A1.2(a)(2) ………………………………………………………..14, 15

*ii*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

───────────────

**Docket No. 13-3945-cr**

───────────────

**UNITED STATES OF AMERICA,**

*Appellee,*

**-against-**

**LACEY SCOTT,**

*Defendant-Appellant.*

───────────────

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

───────────────

**BRIEF FOR APPELLANT LACEY SCOTT**

───────────────

**STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION**

Lacey Scott was charged with committing offenses against the United States for which the district court had jurisdiction pursuant to Title 18, United States Code, section 3231. He appeals from a final judgment of conviction and sentence that disposed of all claims with respect to all parties before the district court; this Court, therefore, has jurisdiction pursuant to Title 28, United States Code, section

1

1291.  By filing a timely notice of appeal on October 17, 2013, (A.[1] 59), he

complied with Federal Rule of Appellate Procedure 4(b).


## QUESTION PRESENTED

> Whether the sentence imposed upon Mr. Scott was
> procedurally unreasonable where the district court failed
> to adequately explain its reasons for finding that offenses
> charged in a single indictment for which he had
> previously been convicted and sentenced were separated
> by an intervening arrest, which was necessary to properly
> calculate his criminal history category and advisory
> sentencing guidelines range, and failed to make
> documents it relied upon part of the record.


## STATEMENT OF THE CASE

Mr. Scott appeals from a judgment of the United States District Court for the

Southern District of New York (Sullivan, D.J), entered October 9, 2013, convicting

him, on his plea of guilty, of one count of possessing a firearm as a felon, in

violation of Title 18, United States Code, section 922(g)(1), and one count of re-

entering the United States illegally after being deported following conviction of an

aggravated felony, in violation of Title 8, United States Code, sections 1326(a) and

(b)(2).  He was sentenced, principally, to concurrent terms of imprisonment of 108

---

[1]  "A." refers to the Appendix filed with this brief.

2

months, and concurrent terms of supervised release of three years, on each count of conviction. He is currently serving that sentence.

## STATEMENT OF FACTS

### A. Background.

Lacey Scott was arrested on February 15, 2012, by New York City Police Department officers and charged in state court (Bronx County) with possession of a gun. While on patrol in an unmarked police car, the officers stopped a car driven by an individual named Damian Cunningham, in which Mr. Scott was the sole passenger. During a search of the car, one of the officers recovered a loaded gun under the front passenger seat, where Mr. Scott had been riding. When the officer gave his partner a coded advisory that he had recovered a gun, by stating "lunch," Mr. Scott fled, and was apprehended by the other officer a few blocks away. (Presentence Report[2] ("PSR") ¶¶ 7-12.)

Mr. Scott told the officers that his was name was "Collin Watson," and produced a California driver's license bearing that name. He also gave that name when he was later questioned by someone with the Bronx County District Attorney's Office. (PSR ¶¶ 12,13.)

When arrested, Mr. Scott had previously been convicted of felonies. On

---

[2] The Presentence Report is being filed separately under seal.

November 22, 2005, in the United States District Court for the Southern District of New York, he was convicted, on Indictment Number 04 Cr. 1074 (CM), of three charges: possession of a weapon with an obliterated serial number, in violation of Title 18, United States Code, section 922(k); possession with intent to distribute a controlled substance while under federal release, in violation of Title 21, United States Code, sections 812, 841(a) and 841(b)(1)(C); and possession of a firearm in furtherance of drug trafficking, in violation of Title 18, United States Code, section 924(c)[3]. In addition, he was convicted on May 10, 2005, in New York State Court, Westchester County, of criminal possession of a controlled substance in the fourth degree. (PSR ¶ 15.)

Mr. Scott was deported to his native Jamaica on August 29, 2006, following the above convictions. He did not obtain permission from the Attorney General or Secretary of the Department of Homeland Security before re-entering the United States. (PSR ¶¶ 17, 18, 19.)

**B. The Charges.**

On February 15, 2012, a two-count indictment was filed in the Southern District of New York. Count One charged Mr. Scott with being a felon in possession of a firearm, in violation of Title 18, United States Code, section

---

[3] As discussed *below*, this appeal concerns the proper assessment of criminal history points for the three counts of conviction.

922(g)(1). Count Two charged him with re-entering the United States without permission of the Attorney General or Secretary of the Department of Howmeland Security, after having been deported following conviction for an aggravated felony, in violation of Title 8, United States Code, sections 1326(a) and (b)(2).

## C. The Hearing.

Prior to pleading guilty, Mr. Scott moved to suppress the gun based on an illegal stop and search of the car in which he was riding. Following an evidentiary hearing, the district court denied his motion[4]. (A. 9.)

## D. The Plea Agreement.

On May 13, 2013, Mr. Scott entered an agreement with the government, pursuant to which he pled guilty to Count One (the gun charge) and agreed to a non-jury trial on stipulated facts as to Count Two (illegal re-entry), thus preserving his appellate rights with regard to that charge[5]. The district court found him guilty

---

[4] Because Mr. Scott subsequently pled guilty to the gun charge, he waived his right to appeal the district court's denial of his suppression motion.

[5] Mr. Scott's arguments in the district court addressed the derivative naturalization statute in effect at the time, Title 8, United States Code, 1432(a). He argued that: the statute's requirement that his father had to have been "legally separated" from his mother for him to derive citizenship from him when he naturalized was satisfied by a document in which his mother ceded custody of Mr. Scott to his father and by his father's marriage to another woman, and did not require his parents to have ever been legally married; the "canon of constitutional avoidance" required the court to lend a meaning to the term "legal separation" to avoid constitutional problems; without such an interpretation, section 1432(a) unconstitutionally distinguished between children of parents born to married and unmarried parents, in violation of the Equal Protection Clause; and section 1432(a) unconstitutionally discriminated on the basis of gender because it provided different requirements where the custodial parent was the mother and not the father.

In a case then-pending, but subsequently decided, *Pierre v. Holder*, 738 F.3d 39 (2d Cir. 2013), the Court decided each of these issues contrary to Mr. Scott's position, and, on October 6, 2014, the Supreme Court denied *cert*.

(Continued on following page)

on Count Two.  (PSR ¶ 4.)

In their agreement, the parties stipulated to Mr. Scott's advisory sentencing guidelines range. They agreed that, as to the gun charge, his base offense level was 20, pursuant to U.S.S.G. section 2K2.1(a)(4), as he had possessed the gun subsequent to incurring a prior conviction for either a crime of violence or controlled substance offense.  As to the illegal re-entry charge, the parties agreed that, pursuant to section 2L1.2(a), his base offense level was 8, and this was increased by 16 levels, pursuant to section 2L1.2(b)(1)(A), because Mr. Scott had been deported after being convicted for a firearms offense for which he received criminal history points, leading to a total offense level of 24.  The parties agreed that his combined offense level was 26, pursuant to section 3D1.4, and that his total offense level, after a 3-level reduction for timely acceptance of responsibility was 23.  The agreement stated that, "[b]ased on the information now available to the U.S. Attorney's Office (including representations by the defense), the defendant has ten criminal history points, which places him in Criminal History Category V."  As a result, his stipulated guidelines range, at offense level 23 in criminal history category V, was 84 to 105 months' imprisonment.   (PSR ¶ 5.) The agreement provided that Mr. Scott waived his right to appeal a sentence within or below the stipulated range and the government waived its right to appeal a

_Pierre v. Holder_, 135 S.Ct. 58 (2014). Thus, Mr. Scott's arguments are foreclosed and not raised in this appeal.

sentence within or above it.

**E. The Presentence Report.**

The offense level calculation in the Presentence Report concurred with that in the parties' agreement. However, contrary to the agreement, Probation found that Mr. Scott had only seven, rather than ten, criminal history points, and was, therefore, in criminal history category IV, rather than V. As a result, Probation said that Mr. Scott's advisory guidelines range was a term of imprisonment on 70 to 87 months, rather than 84 to 105 months. (PSR ¶¶ 60, 61, 80.) Probation recommended concurrent 70-month terms of imprisonment and concurrent 3-year terms of supervised release for the two counts of conviction. (PSR at 17-18.)

The difference in criminal history points resulted from Probation's view of the number of points that should be assessed for Mr. Scott's conviction and sentence of November 10, 2005, on Southern District Indictment Number S2 04 Cr. 1074. That indictment covered two incidents. In the first, on August 23, 2003, Mr. Scott was found with a firearm with a defaced serial number, giving rise to the charge in Count One of the indictment, possession of a firearm with an obliterated serial number. The second related to an incident on September 1, 2004, in which Mr. Scott was found in a car from which were recovered a loaded handgun and a number of packages of cocaine, giving rise to the charges in Counts Two and Three of the indictment, possession with intent to distribute a controlled substance

7

and possession of a firearm in connection with the drug trafficking offense, respectively. (PSR ¶¶ 57, 58, 59.)

The government objected to Probation's calculation of criminal history points. Probation responded,

> The plea agreement mistakenly assessed three criminal history points for the defendant's prior federal conviction, citing that the defendant had an intervening arrest. While the defendant was on bail at the time he committed Count 2 and 3 under Information S2 04 CR 1074 (CM), there was no intervening arrest, and the defendant pled guilty to the same charging instrument. Moreover, there is no intervening arrest reflected in E-justice, Atlas, or CME/CF.

(PSR ¶ 81.)

## F.  The Sentencing Hearing.

At the sentencing hearing, the government argued that Probation erred when they found there had not been an intervening arrest between the two incidents. The government stated they had the "docket sheet" from the case, which showed that, Mr. Scott was charged for the incident of August 22, 2003, on June 22, 2004, and that, while on bail on that charge, he was arrested a second time, on September 1, 2004, by the New York City Police Department, for "a totally separate offense," that reflected in "paragraph 59 of the PSR"; therefore, there was "an intervening arrest." (A. 23.)  The government did not know whether Probation had "missed the second arrest." (A. 24.)  Further, the government "asked them if they could point

8

me in the direction of their authority for their view. They did not." (A. 24.)

Defense counsel pointed out, "[P]robation addresses [the prosecutor]'s comments to them in paragraph 81. They take the view that there was no intervening arrest to support. So it is not as if they were not mindful of his objection. They took a look at it and stood by their original calculation." (A. 24.)

The district court did not know how it could resolve the dispute as to whether there was an intervening arrest, as it didn't "have much beyond what is in the pre-sentence report." (A. 24.) In response to the court's question as to "the basis for me concluding that there was an intervening arrest," the government offered to "hand it the docket sheet from his previous Southern District [*sic*]." (A. 24.) Asked whether "the docket sheet reflect[ed] it," the government responded, "The indictment. The intervening arrest was he was arrested August 22nd and charged with that crime. There was then another arrest, in September, by a different police department." (A. 25.) Asked where another arrest was reflected, the government responded, "58 and 59 are what was the basis, your Honor, for the conviction in paragraph 57. You can glean that, your Honor, from the PSR." (A. 25.)

Reviewing the information in the PSR about the incident on September 1st, the court noted, "It doesn't tell me that there was an intervening arrest. It just tells me that's the day he committed a crime, right?" (A. 25-26.) The government

insisted that the arrest was "reflected" in paragraph 59 of the Presentence Report, and that Counts Two and Three of the indictment referenced the events of September 1st. (A. 26.)

Paragraph 59 of the PSR states,

> On September 1, 2004, a car was pulled over by New York City police officers in Bronx County. Three individuals were in the vehicle, one of whom was Scott. As the officers approached the car, Scott appeared to have put something in the seat in front of him, or its pouches. He was made to exit the car as were the other occupants. A search of the vehicle disclosed a fully loaded Astra .380 caliber handgun in addition to a number of individually wrapped packages of cocaine.

The court said it could "connect the dots," and asked the defense whether there was a dispute that the indictment had three counts that charged criminal conduct on both August 22nd and September 1st, and were "prompted by a separate arrest described in paragraph 59." Defense counsel responded that she had not seen a copy of the indictment, the defense was not copied on the government's objection to the probation officer, and "it wasn't mentioned in the government's sentencing submission." (A. 26.) However, defense counsel "suspect[ed] that the probation office, since they wrote paragraphs 58 and 59, could have connected the dots, too." (A. 26-27.)

10

After asking to look at the indictment[6], the court concluded, "I think the fair inference – and certainly the standard here is preponderance of the evidence – is that there was an additional arrest and that there should be an additional three criminal history points, which then results in the criminal history category being category V instead of category IV." (A. 27-28.)  As a result, Mr. Scott's advisory sentencing range was 84 to 105 months.  (A. 28.)

The district court imposed an above-guidelines sentence- concurrent terms of imprisonment of nine years, or 108 months, and concurrent terms of supervised release of three years, on each count.  The court found the sentence "warranted in light of this conduct, in light of the prior criminal conduct, and in light of all the facts that have been discussed by me and by the lawyers here today." (A. 46-47.)

## ARGUMENT

## THE SENTENCE IMPOSED BY THE DISTRICT COURT WAS PROCEDURALLY UNREASONABLE.

## A. Introduction.

The sentence imposed was procedurally unreasonable, because the district court did not adequately explain its reasons for finding there had been an

---

[6] Neither the indictment nor the docket sheet from the earlier case, referenced by the government, was made a part of the record.

intervening arrest and did not make any documents upon which it relied -- notably, the docket sheet and indictment to which it referred -- part of the record. The court made its finding despite the fact that Probation had specifically considered and investigated whether there had been an intervening arrest between the incidents underlying Mr. Scott's prior federal convictions, which were charged in separate counts of a single indictment, and concluded that there had not. Yet, the court ultimately decided to "connect the dots" and "infer" that there had been an intervening arrest.

A. **Applicable Law.**

Under the standard established in *United States v. Booker*, 543 U.S. 220, 260-61 (2005), this Court reviews sentencing determinations for reasonableness. *United States v. Crosby*, 397 F.3d 103, 114-115 (2d Cir. 2005); *United States v. Rattoballi*, 452 F.3d 127, 131 (2d Cir. 2006). Such review is "akin to review for abuse of discretion." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

In *Rattoballi*, the Court summarized the applicable issues in more detail:

> Reasonableness review has two components: (1) procedural reasonableness, whereby we consider such factors as whether the district court properly (a) identified the Guidelines range supported by the facts found by the court, (b) treated the Guidelines as advisory, and (c) considered the Guidelines together with the other factors outlined in 18 U.S.C. § 3553(a); and

> (2) substantive reasonableness, whereby we consider whether the length of the sentence is reasonable in light of the factors outlined in 18 U.S.C. § 3553(a). *Crosby*, 397 F.3d at 113-15. After *Booker*, we still review a district court's interpretation of the Sentencing Guidelines *de novo* and evaluate its findings of fact under the clearly erroneous standard. *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005).

*Id*. at 131-132 (footnote omitted).

Subsequently, in *United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008), this Court examined its evaluation of reasonableness in light of the Supreme Court's pronouncements in *Gall v. United States*, 552 U.S. 38 (2007), *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Rita v. United States*, 551 U.S. 338 (2007). That review, while deferential, continues to focus on the procedural and substantive reasonableness of the sentence. *Cavera*, 550 F.3d at 189.

With regard to procedural reasonableness, *Cavera* explains that:

> A district court commits procedural error where it fails to calculate the Guidelines range (unless omission of the calculation is justified, see *Crosby*, 397 F.3d at 112), makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory. *Gall*, 128 S.Ct. at 597. It also errs procedurally if it does not consider the §3553(a) factors, or rests its sentence on a clearly erroneous finding of fact. *Id*.

*Id*. at 190. In addition, procedural error occurs when a court "fails adequately to explain its chosen sentence," *id*., and "[t]he statutory scheme has long required

13

sentencing judges, 'at the time of sentencing,' to state their reasons for imposing the particular sentence 'in open court.' 18 U.S.C. § 3553(c)." *Id.* at 192-193. Inherently, Title 18, United States Code, section 3742 also defines the outer limits of reasonableness. In particular, section 3742(a)(1) provides for review of sentences imposed "in violation of law."

With regard to factual findings supporting a court's sentencing determination, the standard for proving such facts is a preponderance of the evidence, and this Court reviews a district court's factual conclusions for clear error. *United States v. Zagari*, 111 F.3d 307, 323 (2d Cir. 1997). Clear error exists when the Court is "'left with the definite and firm conviction that a mistake has been committed.'" *Cavera*, 550 F.3d at 204 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

United States Sentencing Guidelines section 4A1.1(a) provides that, in calculating a defendant's criminal history category, 3 points are to be added for each prior sentence exceeding one year and one month. Section 4A1.2(a)(2) states,

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the

14

same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence. See also §4A1.1(e).

## C. The Sentence was Procedurally Unreasonable.

The sentence imposed by the district court was procedurally unreasonable in that the court engaged in inadequate fact-finding regarding a disputed factual issue (whether there had been an intervening arrest), failed to adequately state the reasons for the conclusion it reached, and failed to make documents upon which it relied part of the record.

The factual issue the court had to decide was straight-forward. Mr. Scott had been convicted and sentenced in federal court of three counts contained in a single indictment. Count One charged him with possessing a firearm with an obliterated serial number on August 23, 2003. Counts Two and Three charged him with possessing a controlled substance with intent to distribute and possessing a firearm in connection with that drug charge, on September 1, 2004.

If the offense charged in Count One was separated from the offenses charged in Counts Two and Three by an intervening arrest, he would properly receive three criminal history points for the offense committed on August 23rd and three additional criminal history points for the offenses committed on September 1st, pursuant to U.S.S.G. section 4A1.2(a)(2) If, on the other hand, the evidence

did not establish such an intervening arrest, he would receive a total of three points for all the crimes charged in the same indictment, rather than a total of six. *Id.* The government had the burden of proving, by a preponderance of the evidence, that there was an intervening arrest.

In the PSR, Probation stated that there was no intervening arrest, and, in particular, that no intervening arrest was reflected in the data bases they had checked- "E-justice, Atlas, and CME/CF."

The district court stated it could "connect the dots," and concluded "the fair inference" was that there had been "an additional arrest." However, the court did not state what the dots were that it was connecting or what facts the fair inference it drew was based upon. While it appears the court reviewed documents – a docket sheet and indictment -- provided to it (but apparently not to the defense) by the government, the documents were not made part of the record. Nor did the court state what facts established by those documents supported the inference it made. As a result, this Court cannot determine whether the district court's resolution of the disputed factual issue was correct.

Because of the district court's flawed fact-finding, and failure to make an adequate record, the sentenced it imposed was procedurally unreasonable. The case should be remanded to the district court for re-sentencing.

16

## CONCLUSION

For the reasons stated *above*, the Court should vacate the sentence imposed

by the district court and remand this case for re-sentencing.

Dated: New York, New York
        November 20, 2014

                                    Respectfully submitted,

                                    /s/
                                    Jesse M. Siegel (JS 7331)
                                    *Attorney for the Appellant*
                                    *Lacey Scott*

                                    233 Broadway, Suite 707
                                    New York, NY 10279
                                    212-207-9009
                                    jessemsiegel@aol.com

17

## CERTIFICATE OF COMPLIANCE

I certify that the brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2007 in Times New Roman, 14-point font. Consistent with Rule 32(a)(7)(A), the brief does not exceed 14,000 words.

/s/ _____

Jesse M. Siegel (JS7331)
233 Broadway, Suite 707
New York, New York 10279
(212) 207-9009
*Attorney for Appellant Lacey Scott*

Dated:    New York, New York
            November 20, 2014

# APPENDIX

# APPENDIX INDEX

| Item | Page |
| --- | --- |
| Docket Entries | 1 |
| Indictment | 13 |
| Sentencing Transcript | 16 |
| Judgment | 54 |
| Notice of Appeal | 59 |

A copy of the presentence report is submitted separately under
seal.

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:12-cr-00154-RJS-1

Case title: USA v. Scott

Date Filed: 02/15/2012
Date Terminated: 10/09/2013

Assigned to: Judge Richard J. Sullivan

**Defendant (1)**

**Lacey Scott**
*TERMINATED: 10/09/2013*
*also known as*
Collin Watson
*TERMINATED: 10/09/2013*

represented by **Joanna C Hendon**
Spears & Imes LLP
51 Madison Avenue
New York, NY 10010
(212) 213-6553
Fax: (212) 213-0849
Email: jhendon@spearsimes.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Kelly Anne Moore**
Morgan, Lewis & Bockius LLP (New
York)
101 Park Avenue
New York, NY 10178
(212)-309-6612
Fax: (212)-309-6001
Email: kelly.moore@morganlewis.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nicholas Schretzman**
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178
(212)-309-6257
Fax: (212)-309-6001
Email: nschretzman@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Pending Counts**

18:922G.F UNLAWFUL TRANSPORT

**Disposition**

Imprisonment for a total term of 108
Months (9 years) on Count One and 108

A. 1

OF FIREARMS, ETC. (FELON IN
POSSESSION OF A FIREARM)
(1s)

months (9 years) on Count Two, to run
concurrently. Supervised release for a
term of 3 years on Count One and 3
years on Count Two, to run concurrently.

8:1326B.F REENTRY OF DEPORTED
ALIEN - FELONY
(2s)

Imprisonment for a total term of 108
Months (9 years) on Count One and 108
months (9 years) on Count Two, to run
concurrently. Supervised release for a
term of 3 years on Count One and 3
years on Count Two, to run concurrently.

## Highest Offense Level (Opening)

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 8:1326B.F REENTRY OF DEPORTED ALIEN - FELONY (1) | All open counts are dismissed on the motion of the US |
| 18:922G.F UNLAWFUL TRANSPORT OF FIREARMS, ETC. (FELON IN POSSESSION OF A FIREARM) (2) | All open counts are dismissed on the motion of the US |

## Highest Offense Level (Terminated)

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

## Plaintiff

**USA**  represented by **Ian Patrick McGinley**
United States Attorney Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-2257
Email: patrick.mcginley@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |
| 02/15/2012 | 1 | INDICTMENT FILED as to Lacey Scott (1) count(s) 1, 2. (jm) (Entered: 02/16/2012) |
| 02/15/2012 | | Case Designated ECF as to Lacey Scott. (jm) (Entered: 02/16/2012) |

A. 2

| 03/08/2012 | 3 | NOTICE OF ATTORNEY APPEARANCE: Joanna C Hendon appearing for Lacey Scott. (Hendon, Joanna) (Entered: 03/08/2012) |
|---|---|---|
| 03/08/2012 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Initial Appearance as to Lacey Scott held on 3/8/2012. (jw) (Entered: 03/12/2012) |
| 03/08/2012 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Plea entered by Lacey Scott (1) Count 1,2 Not Guilty. (jw) (Entered: 03/12/2012) |
| 03/08/2012 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Pretrial Conference as to Lacey Scott held on 3/8/2012 as to Lacey Scott( Pretrial Conference set for 4/11/2012 at 12:45 PM before Judge Richard J. Sullivan.) The Court set a status conference for April 11, 2012 at 12:45 p.m. and excluded time between March 8, 2012 and April 11, 2012. The Court also ordered that, at the April 11, 2012 status conference, Defendant shall advise the Court as to what motions, if any, he intends to make. (jw) (Entered: 03/12/2012) |
| 03/08/2012 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Arraignment as to Lacey Scott (1) Count 1,2 held on 3/8/2012. AUSA Ian McGinley present for the government. Attorney Joanna C. Hendon and Nick Schretzman present with Defendant. Court reporter present. U.S. marshals present. Defendant in custody. The Court appointed Joanna Hendon CJA counsel for Defendant. Defendant pled not guilty to the charges in the Indictment. The government indicated that it has produced discovery to Defendant. The Court set a status conference for April 11, 2012 at 12:45 p.m. and excluded time between March 8, 2012 and April 11, 2012. The Court also ordered that, at the April 11, 2012 status conference, Defendant shall advise the Court as to what motions, if any, he intends to make. (jw) (Entered: 03/12/2012) |
| 03/08/2012 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Plea entered by Lacey Scott (1) Count 1,2 Not Guilty. (jw) (Entered: 03/14/2012) |
| 03/08/2012 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Status Conference as to Lacey Scott held on 3/8/2012 as to Lacey Scott( Status Conference set for 4/11/2012 at 12:45 PM before Judge Richard J. Sullivan.) (jw) (Entered: 03/14/2012) |
| 03/08/2012 | 5 | CJA 20 as to Lacey Scott: Appointment of Attorney Joanna C. Hendon for Lacey Scott. (Signed by Judge Richard J. Sullivan on 3/8/12) CJA Office has mailed the original and sent a copy to the file. (sac) (Entered: 03/16/2012) |
| 03/15/2012 | 4 | NOTICE OF ATTORNEY APPEARANCE: Nicholas Schretzman appearing for Lacey Scott. (Schretzman, Nicholas) (Entered: 03/15/2012) |
| 04/10/2012 | 6 | NOTICE OF ATTORNEY APPEARANCE: Kelly Anne Moore appearing for Lacey Scott. (Moore, Kelly) (Entered: 04/10/2012) |
| 04/11/2012 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Status Conference as to Lacey Scott held on 4/11/2012 as to Lacey Scott( Status Conference set for 6/1/2012 at 04:30 PM before Judge Richard J. Sullivan.) AUSA Ian Patrick McGinley present for the government. Attorneys Joanna C. Hendon, Kelly Anne Moore, and Nicholas Schretzman present with Defendant. Defendant in custody. U.S. marshals present. Court reporter present. The Court set a status conference for June 1, 2012 at 4:30 p.m. and excluded time between April 11, 2012 |

A. 3

| | | and June 1, 2012. The Court also ordered that, at the June 1, 2012 status conference, the parties shall advise the Court as to what motions, if any, they intend to make, and whether a disposition has been reached. (jw) (Entered: 04/12/2012) |
|---|---|---|
| 04/11/2012 | 9 | CJA 23 Financial Affidavit by Lacey Scott. CJA Joanna C. Hendon appointed. (Signed by Judge Judge Richard J. Sullivan) (dnd) (Entered: 06/13/2012) |
| 04/12/2012 | 7 | TRANSCRIPT of Proceedings as to Lacey Scott held on March 8, 2012 before Judge Richard J. Sullivan. (djc) (Entered: 04/12/2012) |
| 05/11/2012 | 8 | TRANSCRIPT of Proceedings as to Lacey Scott held on 4/11/2012, 12:57 p.m. before Judge Richard J. Sullivan. (rjm) (Entered: 05/11/2012) |
| 06/01/2012 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Status Conference as to Lacey Scott held on 6/1/2012. The Court held a status conference in this matter on June 1, 2012 in Courtroom 21C. AUSA Ian Patrick McGinley present for the government. Attorneys Kelly Anne Moore and Nicholas Schretzman present with Defendant, who was in custody. U.S. Marshals present. Court reporter present. The Court set a status conference for July 18, 2012 at 2:45 p.m. and ordered the parties to indicate at that conference what motions, if any, they intend to make and whether a disposition has been reached in this action. The Court excluded time between June 1, 2012 and July 18, 2012. ( Status Conference set for 7/18/2012 at 02:45 PM before Judge Richard J. Sullivan.) (ja) (Entered: 06/07/2012) |
| 06/27/2012 | 10 | TRANSCRIPT of Proceedings as to Lacey Scott held on 6/1/2012, 10:30 a.m. before Judge Richard J. Sullivan. (rjm) (Entered: 06/27/2012) |
| 07/18/2012 | 11 | ORDER as to Lacey Scott. As stated on the record at the July 18, 2012 conference, the parties shall adhere to the following briefing schedule for Defendant's contemplated motions: September 7, 2012- Defendant shall submit his motions and accompanying briefs; September 21, 2012- The government shall submit its opposition brief(s) to Defendant's motions; and September 28, 2012- Defendant shall submit its reply briefs. Also as stated on the record at the July 18, 2012 conference, the parties shall appear on October 17, 2012 at 10:00 a.m. for either an oral argument or a hearing regarding Defendant's motions. SO ORDERED. (Signed by Judge Richard J. Sullivan on 7/18/2012)(bw) (Entered: 07/19/2012) |
| 07/18/2012 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Status Conference as to Lacey Scott held on 7/18/2012. The Court held a status conference in this matter on July 18, 2012 in Courtroom 21C. AUSA Ian Patrick McGinley present for the government. Attorneys Kelly Anne Moore and Nicholas Schretzman present with Defendant, who was in custody. U.S. marshal present. Court reporter present. The Court set a briefing schedule for Defendants' contemplated motions, as memorialized in the Court's Order, dated July 18, 2012. The Court also set an oral argument/hearing date of October 17, 2012 at 10:00 a.m. The Court excluded time between July 18, 2012 and October 17, 2012. (bw) (Entered: 07/20/2012) |
| 07/18/2012 | | ORAL ORDER as to Lacey Scott. Time excluded from 7/18/2012 until 10/17/2012. Oral Argument set for 10/17/2012 at 10:00 AM before Judge Richard J. Sullivan. (bw) (Entered: 07/20/2012) |

A. 4

| 08/16/2012 | 12 | TRANSCRIPT of Proceedings as to Lacey Scott held on 7/18/2012 before Judge Richard J. Sullivan. (ja) (Entered: 08/20/2012) |
| 09/07/2012 | 13 | MOTION to Suppress. Document filed by Lacey Scott. (Moore, Kelly) (Entered: 09/07/2012) |
| 09/07/2012 | 14 | MEMORANDUM in Support by Lacey Scott re 13 MOTION to Suppress.. (Moore, Kelly) (Entered: 09/07/2012) |
| 09/07/2012 | 15 | DECLARATION of Lacey Scott in Support as to Lacey Scott re: 13 MOTION to Suppress.. (Moore, Kelly) (Entered: 09/07/2012) |
| 09/07/2012 | 16 | DECLARATION of Nicholas Schretzman in Support as to Lacey Scott re: 13 MOTION to Suppress.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Moore, Kelly) (Entered: 09/07/2012) |
| 09/07/2012 | 17 | MOTION to Dismiss. Document filed by Lacey Scott. (Moore, Kelly) (Entered: 09/07/2012) |
| 09/07/2012 | 18 | MEMORANDUM in Support by Lacey Scott re 17 MOTION to Dismiss.. (Moore, Kelly) (Entered: 09/07/2012) |
| 09/07/2012 | 19 | AFFIDAVIT of Beverly Smith in Support as to Lacey Scott re 17 MOTION to Dismiss.. (Moore, Kelly) (Entered: 09/07/2012) |
| 09/07/2012 | 20 | DECLARATION of Faithlyn Scott in Support as to Lacey Scott re: 17 MOTION to Dismiss.. (Moore, Kelly) (Entered: 09/07/2012) |
| 09/07/2012 | 21 | DECLARATION of Nicholas Schretzman in Support as to Lacey Scott re: 17 MOTION to Dismiss.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Moore, Kelly) (Entered: 09/07/2012) |
| 09/18/2012 | 22 | ENDORSED LETTER as to Lacey Scott addressed to Judge Richard J. Sullivan from Ian McGinley dated 9/14/2012 re: Reschedule Conference as to Lacey Scott( Oral Argument set for 11/16/2012 at 04:00 PM before Judge Richard J. Sullivan.)..ENDORSEMENT...The Court GRANTS the government's request and adopts the amended briefing schedule set forth above. In light of the amended briefing schedule, IT IS HEREBY ORDERED that the oral argument and hearing schedule for October 17, 2012 are adjourned until November 16, 2012 at 4:00pm. (Signed by Judge Richard J. Sullivan on 9/18/2012)(jw) (Entered: 09/18/2012) |
| 10/12/2012 | 23 | MEMORANDUM OF LAW in Opposition by USA as to Lacey Scott re: 13 MOTION to Suppress. filed by Lacey Scott. (Attachments: # 1 Exhibit, # 2 Exhibit) (McGinley, Ian) (Entered: 10/12/2012) |
| 10/12/2012 | 24 | MEMORANDUM OF LAW in Opposition by USA as to Lacey Scott re: 17 MOTION to Dismiss. filed by Lacey Scott. (McGinley, Ian) (Entered: 10/12/2012) |
| 10/12/2012 | 25 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT -** MEMORANDUM in Opposition by USA as to Lacey Scott re 17 MOTION to Dismiss. *Exhibits* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit) (McGinley, Ian) Modified on 10/15/2012 (db). (Entered: 10/12/2012) |

A. 5

| 10/15/2012 |    | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Ian Patrick McGinley as to Lacey Scott: Document No. <u>25</u> Exhibits. This document is not filed via ECF. (db) (Entered: 10/15/2012) |
|------------|----|-----------|
| 10/23/2012 | <u>26</u> | ENDORSED LETTER as to Lacey Scott addressed to Judge Richard J. Sullivan from Attorney Kelly A. Moore dated October 19, 2012 re: On September 7, 2012, we filed a motion to dismiss Count One of the Indictment, and a motion to suppress evidence related to Count Two of the Indictment. With the government's consent, I now write to request that our deadline to file our replies be extended an additional one week, until November 2, 2012. ENDORSEMENT: The Court GRANTS Defendant's request. Accordingly, in light of the extension and to give the Court sufficient time to prepare in advance of oral argument on Defendant's motions, IT IS HEREBY ORDERED that the oral argument scheduled for November 16, 2012 is adjourned until November 26, 2012 at 4:00 p.m. SO ORDERED. (Signed by Judge Richard J. Sullivan on 10/22/2012)(bw) (Entered: 10/23/2012) |
| 11/05/2012 | <u>27</u> | REPLY MEMORANDUM OF LAW in Support as to Lacey Scott re: <u>13</u> MOTION to Suppress.. (Moore, Kelly) (Entered: 11/05/2012) |
| 11/05/2012 | <u>28</u> | DECLARATION of Nicholas Schretzman in Support as to Lacey Scott re: <u>13</u> MOTION to Suppress.. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B)(Moore, Kelly) (Entered: 11/05/2012) |
| 11/05/2012 | <u>29</u> | REPLY MEMORANDUM OF LAW in Support as to Lacey Scott re: <u>17</u> MOTION to Dismiss.. (Moore, Kelly) (Entered: 11/05/2012) |
| 11/05/2012 | <u>30</u> | DECLARATION of Nicholas Schretzman in Support as to Lacey Scott re: <u>17</u> MOTION to Dismiss.. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E)(Moore, Kelly) (Entered: 11/05/2012) |
| 11/14/2012 | 31 | SEALED DOCUMENT placed in vault. (mps) (Entered: 11/14/2012) |
| 11/14/2012 | <u>32</u> | ORDER as to Lacey Scott. Accordingly, IT IS HEREBY ORDERED that the government shall properly re-file the exhibits forthwith with an accompanying affidavit or declaration certifying under penalty of perjury that the non-self authenticating exhibits docketed at Doc. No. 25 are true and correct copies of what the government purports them to be. SO ORDERED. (Signed by Judge Richard J. Sullivan on 11/13/12)(jw) (Entered: 11/14/2012) |
| 11/19/2012 | <u>33</u> | MEMORANDUM in Opposition by USA as to Lacey Scott re <u>13</u> MOTION to Suppress.. (McGinley, Ian) (Entered: 11/19/2012) |
| 11/19/2012 | <u>34</u> | DECLARATION of P. Ian McGinley in Opposition by USA as to Lacey Scott re: <u>13</u> MOTION to Suppress.. (Attachments: # <u>1</u> Exhibit, # <u>2</u> Exhibit)(McGinley, Ian) (Entered: 11/19/2012) |
| 11/19/2012 | <u>35</u> | MEMORANDUM in Opposition by USA as to Lacey Scott re <u>17</u> MOTION to Dismiss.. (McGinley, Ian) (Entered: 11/19/2012) |
| 11/19/2012 | <u>36</u> | DECLARATION of P. Ian McGinley in Opposition by USA as to Lacey Scott re: <u>17</u> MOTION to Dismiss.. (Attachments: # <u>1</u> Exhibit, # <u>2</u> Exhibit, # <u>3</u> Exhibit, # <u>4</u> Exhibit, # <u>5</u> Exhibit, # <u>6</u> Exhibit, # <u>7</u> Exhibit, # <u>8</u> Exhibit, # <u>9</u> Exhibit, # <u>10</u> Exhibit, # <u>11</u> Exhibit, # <u>12</u> Exhibit, # <u>13</u> Exhibit, # <u>14</u> Exhibit, # <u>15</u> Exhibit, # <u>16</u> Exhibit) |

A. 6

| | | (McGinley, Ian) (Entered: 11/19/2012) |
|---|---|---|
| 11/21/2012 | 37 | ORDER as to Lacey Scott. IT IS HEREBY ORDERED that the oral argument on both pending motions currently scheduled for November 26, 2012 at 4:00 p.m. shall begin at 4:30 p.m. instead. At the oral argument, the Court will address the need for a hearing and set a hearing date if it determines that one is necessary. SO ORDERED. (Signed by Judge Richard J. Sullivan on 11/21/2012)(bw) (Entered: 11/21/2012) |
| 11/26/2012 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Oral Argument as to Lacey Scott held on 11/26/2012. re: 13 MOTION to Suppress filed by Lacey Scott, 17 MOTION to Dismiss filed by Lacey Scott. AUSA Ian Patrick McGinley present for the government. Attorneys Kelly Anne Moore and Nicholas Schretzman present with Defendant, who was in custody. U.S. marshals present. Court reporter present. (jbo) (Entered: 11/27/2012) |
| 11/27/2012 | 38 | NOTICE of Change of Address as to Lacey Scott. New Address: Spears & Imes LLP, 51 Madison Avenue, New York, NY, 10010, 2122136553. (Hendon, Joanna) (Entered: 11/27/2012) |
| 11/29/2012 | 39 | ORDER as to Lacey Scott ( Motion Hearing set for 1/9/2013 at 10:00 AM before Judge Richard J. Sullivan.)IT IS HEREBY ORDERED that the parties shall appear for a hearing in this matter regarding Defendant's pending motion to suppress on January 9, 2013 at 10:00am. SO ORDERED. (Signed by Judge Richard J. Sullivan on 11/29/2012)(jw) (Entered: 11/29/2012) |
| 11/29/2012 | 40 | ORDER as to Lacey Scott. Accordingly, It is hereby ORDERED that Ms. Hendon is relieved as counsel of record in this matter and that Ms. Moore and Mr. Schretzman are appointed as Defendant's counsel of record on a pro bono basis. Additionally, in light of the fact that Defendant already qualified for a Criminal Justice Act-Appointed attorney, IT IS FURTHER ORDERED that Ms. Moore and Mr. Schretzman may continue to submit Criminal Justice Act vouchers for any expert service providers they may require or any other reasonable related expenses that they may incur in representing Defendant in this action. SO ORDERED. (Signed by Judge Richard J. Sullivan on 11/29/2012)(jw) (Entered: 11/29/2012) |
| 12/04/2012 | 41 | ORDER denying 13 Motion to Suppress as to Lacey Scott (1). For the reasons stated on the record at the November 26, 2012 oral argument, the Court denies Defendant's motion to suppress evidence recovered from under the passenger seat of the livery cab in which he was traveling as a passenger on the day of his arrest. Although the Court holds that Defendant lacks standing to challenge the search of the livery cab subsequent to the traffic stop, it reserves ruling on Defendant's motion to suppress to the extent that Defendant argues that the stop of the cab itself was unconstitutional. At the hearing scheduled for January 9, 2013 at 10:00a.m., the Court will hear testimony regarding the remaining question presented by the motion to suppress - whether the stop of the livery cab was unconstitutional. (Signed by Judge Richard J. Sullivan on 12/3/2012) (jw) (Entered: 12/04/2012) |
| 12/07/2012 | 42 | DECLARATION of Lacey Scott in Support as to Lacey Scott re: 13 MOTION to Suppress.. (Moore, Kelly) (Entered: 12/07/2012) |
| 01/04/2013 | 43 | SEALED DOCUMENT placed in vault. (mps) (Entered: 01/07/2013) |

A. 7

| | | |
|---|---|---|
| 01/09/2013 | 44 | ORDER as to Lacey Scott ( Status Conference set for 1/24/2013 at 10:00 AM before Judge Richard J. Sullivan.) Depending on Mr. Cunningham's intentions, and also as stated on the record at the January 9 Hearing, the parties shall appear on January 24, 2013 at 10:00a.m. for either a continued hearing or oral argument on the unresolved issues presented by Defendant's motion to suppress. (Signed by Judge Richard J. Sullivan on 1/9/2013)(jw) (Entered: 01/09/2013) |
| 01/09/2013 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: Suppression Hearing as to Lacey Scott held on 1/9/2013. The Court held a suppression hearing in this matter on January 9, 2013 in Courtroom 21C regarding the motion located at Doc. No. 13. AUSAs Ian Patrick McGinley and Justin Anderson present for the government. Attorneys Kelly Anne Moore and Nicholas Schretzman present with Defendant, who was in custody. U.S. marshals present. Court reporter present. The Court heard testimony from two government witnesses: (1) New York Police Department Officer Daryl Maudsley; and (2) New York Police Department Officer William McAloon. The Court also directed the parties to submit a letter, as is described in the Courts January 9, 2013 Order, and set a continued hearing or oral argument for January 24, 2013 at 10:00 a.m. on the unresolved issues presented by Defendants motion to suppress. (jbo) (Entered: 01/10/2013) |
| 01/09/2013 | | Minute Entry for proceedings held before Judge Richard J. Sullivan: As to Lacey Scott, Oral Argument set for 1/24/2013 at 10:00 AM before Judge Richard J. Sullivan. (jbo) (Entered: 01/10/2013) |
| 01/10/2013 | 45 | SEALED DOCUMENT placed in vault. (mps) (Entered: 01/10/2013) |
| 01/24/2013 | 46 | ORDER denying 17 Motion to Dismiss as to Lacey Scott (1) For the reasons stated on the record at the January 24, 2013 hearing and oral argument(the "conference"), the Court denies those portions of Defendant's motion to suppress not already addressed in the Court's Order, dated December 3, 2012. Also as stated on the record at the conference, the Court denies Defendant's motion to dismiss Count One of the Indictment for the reasons set forth in the Court's forthcoming Memorandum and Order. Accordingly, the Clerk of Court is respectfully directed to terminate the motion located at Doc. No. 17. Lastly, and also as stated on the record at the conference, the parties shall adhere to the following pre-trial and trial schedule: May 6, 2013 The government shall produce its expert disclosures to Defendant, if any, and shall submit its motions in limine, exhibit list, and witness list, as well as any 404( b) notice; May 13, 2013 Defendant shall respond to the government's motions in limine and submit his own motions in limine, exhibit list, and witness list;May 20,2013 The government shall respond to Defendant's motions in limine, and the parties shall submit a joint proposed voir dire and request to charge; May 29, 2013 The parties shall appear for a final pre-trial conference at 2:00 p.m. in Courtroom 905 of the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, New York 10007. June 3, 2013 Trial shall commence at 9:30 a.m. in Courtroom 905. SO ORDERED. (Signed by Judge Richard J. Sullivan on 1/24/2013) (dnd) (Entered: 01/24/2013) |
| 01/24/2013 | | Set/Reset Deadlines/Hearings as to Lacey Scott: Government Motions due by 5/6/2013. Defendant's Responses Replies due by 5/13/2013. Government's Reply's due by 5/20/2013 Pretrial Conference set for 5/29/2013 at 2:00 PM in Courtroom 905, 40 Centre Street, New York, NY 10007 before Judge Richard J. Sullivan. |

A. 8

| | |
|---|---|
| | (dnd) (Entered: 01/24/2013) |
| 01/24/2013 | Set/Reset Hearings as to Lacey Scott: Jury Trial set for 6/3/2013 at 9:30 AM in Courtroom 905, 40 Centre Street, New York, NY 10007 before Judge Richard J. Sullivan. (dnd) (Entered: 01/24/2013) |
| 01/24/2013 | Minute Entry for proceedings held before Judge Richard J. Sullivan: Oral Argument as to Lacey Scott held on 1/24/2013 re: 13 MOTION to Suppress filed by Lacey Scott. The Court held a continued suppression hearing and oral argument in this matter on January 24, 2013 in Courtroom 21C regarding the motion located at Doc. No. 13. AUSAs Ian Patrick McGinley and Justin Anderson present for the government. Attorneys Kelly Anne Moore and Nicholas Schretzman present with Defendant, who was in custody. U.S. marshals present. Court reporter present. The government and the defense indicated that they did not wish to call any further witnesses to offer testimony related to the motion to suppress. The Court heard oral argument on the motion. The Court denied Defendants motion to suppress. The Court denied Defendants motion to dismiss Count One of the Indictment, for the reasons set forth in the Courts forthcoming Memorandum and Order. The Court set a pre-trial and trial schedule, as memorialized in the Courts Order, dated January 24, 2013. The Court excluded time between January 24, 2013 and June 3, 2013. (jbo) (Entered: 01/24/2013) |
| 01/30/2013   47 | MEMORANDUM AND ORDER as to Lacey Scott. Defendant Lacey Scott (Defendant) is charged in a two-count Indictment with (1) illegally reentering the United States after committing an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), and (2) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Now before the Court is Defendants motion to dismiss Count One of the Indictment on the ground that he could not have reentered the United States illegally because, prior to his deportation, he derived United States citizenship from his naturalized father. For the reasons that follow, the Court disagrees and, as stated at the Court conference on January 24, 2013, denies Defendants motion. For the foregoing reasons, the Court denies Defendants motion to dismiss Count One of the Indictment. Specifically, the Court finds that Defendant (1) has not satisfied the requirements for derivative citizenship set forth in 8 U.S.C. § 1432(a) (Signed by Judge Richard J. Sullivan on 1/30/2013)(jw) (Entered: 01/30/2013) |
| 05/01/2013   48 | (S1) SUPERSEDING INDICTMENT FILED as to Lacey Scott (1) count(s) 1s, 2s. (jm) (Entered: 05/03/2013) |
| 05/06/2013   49 | ENDORSED LETTER as to Lacey Scott addressed to Judge Richard J. Sullivan from AUSAs Ian McGinley / Rahul Mukhi, dated May 6 2013 re: The parties request that the Court schedule a change of plea hearing/trial on stipulated facts proceeding on Monday, May 13 at 4:00 p.m. In the event that there is no pretrial disposition on May 13, the Government will file its pretrial materials forthwith and the parties will agree to pretrial submission deadlines that will not require an adjournment of the June 3, 2013 trial date in this matter. ENDORSEMENT: So Ordered. (Signed by Judge Richard J. Sullivan on 5/6/2013)(bw) (Entered: 05/07/2013) |
| 05/13/2013 | Minute Entry for proceedings held before Judge Richard J. Sullivan: Plea Agreement Hearing and Status Conference as to Lacey Scott held on 5/13/2013 in |

A. 9

| | | |
|---|---|---|
| | | Courtroom 905. AUSA Ian Patrick McGinley present for the government. Attorneys Kelly Anne Moore, Nicholas Schretzman, and David Luttinger present with Defendant, who was in custody. U.S. marshals present. Court reporter present. Defendant was arraigned on the superseding indictment, S1 12 Cr. 154. The Court accepted Defendants plea to Count One of the superseding indictment. Defendant waived his right to a trial by jury on Court Two of the superseding indictment, consenting to have the Court decide his guilt or innocence on this Count. The parties also stipulated to a list of relevant facts concerning Count Two. Sentencing was set for October 4, 2013 at 2:30 p.m. in Courtroom 905 at 40 Foley Square. (dnd) (Entered: 05/14/2013) |
| 05/13/2013 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Plea entered by Lacey Scott (1) Guilty as to Count 1s. (dnd) (Entered: 05/14/2013) |
| 05/13/2013 | | Set/Reset Hearings as to Lacey Scott: Sentencing set for 10/4/2013 at 2:30 PM in Courtroom 905, 40 Centre Street, New York, NY 10007 before Judge Richard J. Sullivan. (dnd) (Entered: 05/14/2013) |
| 05/14/2013 | 50 | ORDER as to Lacey Scott. For the foregoing reasons, Defendant is found to be guilty beyond a reasonable doubt of Count Two of the Superseding Indictment. Sentencing on both Counts of the Superseding Indictment shall take place on October 4, 2013 at 2:30 p.m. in Courtroom 905 at 40 Foley Square. The parties shall submit their sentencing submissions in accordance with the Court's"Individual Rules of Practice for Sentencing Proceedings," which is available on the Court's website at http://www.nysd.uscourts.gov/cases /show.php?db=judge_info&id=481. (Signed by Judge Richard J. Sullivan on 5/14/2013)(jw) (Entered: 05/15/2013) |
| 09/20/2013 | 51 | SENTENCING SUBMISSION by Lacey Scott. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA, # 28 Exhibit BB, # 29 Exhibit CC, # 30 Exhibit DD, # 31 Exhibit EE)(Moore, Kelly) (Entered: 09/20/2013) |
| 09/27/2013 | 52 | SENTENCING SUBMISSION by USA as to Lacey Scott. (McGinley, Ian) (Entered: 09/27/2013) |
| 10/02/2013 | 53 | ORDER as to Lacey Scott. Sentencing in this matter is currently scheduled for Friday, October 2, 2013 at 2:30 p.m. Due to a conflict in the Court's calendar, the timing of the sentencing must be adjusted. Accordingly, IT IS HEREBY ORDERED THAT the parties shall appear for sentencing at 4:00 p.m. on October 2, 2013 in Courtroom 905 of the Thurgood Marshall Courthouse. SO ORDERED. (Signed by Judge Richard J. Sullivan on 10/2/2013)(bw) (Entered: 10/03/2013) |
| 10/04/2013 | | Minute Entry for proceedings held before Judge Richard J. Sullivan:Sentencing held on 10/4/2013 for Lacey Scott (1) Count 1s,2s. The Court sentenced Defendant in this matter on October 4, 2013 in Courtroom 906 at 40 Foley Square. AUSA Ian Patrick McGinley present for the government. Attorneys Kelly Anne Moore and Nicholas Schretzman, present with Defendant, who was in custody. U.S. marshals present. Court reporter present. Defendant was sentenced to a 9 year term of imprisonment and 3 years of supervised release on each Count (Count One and |

| | | |
|---|---|---|
| | | Count Two) of the S1 12 Cr. 154 to which he plead guilty. The prison terms will run concurrently as will the supervised release term. All open counts were dismissed. (ajc) (Entered: 10/07/2013) |
| 10/09/2013 | | DISMISSAL OF COUNTS on Government Motion as to Lacey Scott (1) Count 1,2. (jw) (Entered: 10/09/2013) |
| 10/09/2013 | 54 | FILED JUDGMENT IN A CRIMINAL CASE as to Lacey Scott (1), Count(s) 1, 2 are dismissed on the motion of the US. Pleaded guilty to Count(s) 1s, Imprisonment for a total term of 108 Months (9 years) on Count One and 108 months (9 years) on Count Two, to run concurrently. Supervised release for a term of 3 years on Count One and 3 years on Count Two, to run concurrently. Pleaded guilty to Count(s) 2s, Imprisonment for a total term of 108 Months (9 years) on Count One and 108 months (9 years) on Count Two, to run concurrently. Supervised release for a term of 3 years on Count One and 3 years on Count Two, to run concurrently. The court makes the following recommendations to the Bureau of Prisons of That the Bureau of Prisons make every effort to house Defendant as close to Los Angeles, California as possible. Special Assessment of $200 which is due immediately. (Signed by Judge Richard J. Sullivan on 10/9/2013)(jw) (Entered: 10/09/2013) |
| 10/09/2013 | | Judgment entered in money judgment book as #13,1954 USM # 84098-054 as to Lacey Scott in the amount of $ 200.00, re: 54 Judgment. (jno) (Entered: 10/15/2013) |
| 10/17/2013 | 55 | NOTICE OF APPEAL by Lacey Scott from 54 Judgment. Filing fee $ 455.00, receipt number 465401079080. (tp) (Entered: 10/17/2013) |
| 10/17/2013 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Lacey Scott to US Court of Appeals re: 55 Notice of Appeal - Final Judgment. (tp) (Entered: 10/17/2013) |
| 10/17/2013 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Lacey Scott re: 55 Notice of Appeal - Final Judgment, 33 Memorandum in Opposition to Motion, 42 Declaration in Support of Motion, 51 Sentencing Submission, 16 Declaration in Support of Motion, 1 Indictment, 30 Declaration in Support of Motion, 41 Order on Motion to Suppress, 29 Reply Memorandum of Law in Support of Motion, 22 Endorsed Letter, Set Deadlines/Hearings, 37 Order, Set Deadlines/Hearings, 47 Order, 49 Endorsed Letter, Set Deadlines/Hearings, 11 Order, Set Deadlines/Hearings, 2 Warrant Issued, 18 Memorandum in Support of Motion, 3 Notice of Attorney Appearance - Defendant, 13 MOTION to Suppress, 27 Reply Memorandum of Law in Support of Motion, 4 Notice of Attorney Appearance - Defendant, 35 Memorandum in Opposition to Motion, 34 Declaration in Opposition to Motion, 19 Affidavit in Support of Motion, 14 Memorandum in Support of Motion, 20 Declaration in Support of Motion, 15 Declaration in Support of Motion, 54 Judgment, 53 Set Deadlines/Hearings, Order, 38 Notice of Change of Address, 50 Order, 48 Indictment, 32 Order, 26 Endorsed Letter, Set Deadlines/Hearings, 46 Order on Motion to Dismiss, 28 Declaration in Support of Motion, 44 Order, Set Deadlines/Hearings, 25 Memorandum in Opposition to Motion, 17 MOTION to Dismiss, 40 Order, 23 Memorandum of Law in Opposition, 52 Sentencing Submission, 6 Notice of Attorney Appearance - Defendant, 36 Declaration in Opposition to Motion, 21 Declaration in Support of Motion, 24 Memorandum of |

| | | Law in Opposition, 39 Order, Set Deadlines/Hearings, were transmitted to the U.S. Court of Appeals. (tp) (Entered: 10/17/2013) |
|---|---|---|
| 10/24/2013 | 56 | TRANSCRIPT REQUEST *(FORM B)* by Lacey Scott for Pre-trial proceedings Argument held on 11/26/2012; Hearing held on 1/9/2013; Argument 1/24/2013 and Sentencing Hearing held on 10/4/2013 before Judge Richard J. Sullivan re: 55 Notice of Appeal - Final Judgment. Transcript due by 11/7/2013. (tp) (Entered: 10/24/2013) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/29/2014 15:16:18 | | |
| **PACER Login:** | jv2977:4143746:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:12-cr-00154-RJS |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

A. 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

        -v.-                    :            **INDICTMENT**

LACEY SCOTT,                    :            S1 12 Cr. 154
    a/k/a, "Collin Watson,"
                               :

        Defendant.              :

- - - - - - - - - - - - - - - - x


                        <u>COUNT ONE</u>

        The Grand Jury charges:

        1.    On or about December 26, 2011, in the Southern

District of New York, LACEY SCOTT, a/k/a "Collin Watson," the

defendant, after having been convicted in a court of a crime

punishable by imprisonment for a term exceeding one year,

knowingly did possess in and affecting commerce a firearm, to

wit, a Charter Arms .44 caliber handgun, and ammunition, to wit,

three rounds of .44 caliber ammunition manufactured by Hornady,

all of which had been shipped and transported in interstate and

foreign commerce.

        (Title 18, United States Code, Section 922(g)(1).)


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 0 1 2013


A. 13

<u>COUNT TWO</u>

The Grand Jury further charges:

2.   From at least on or about December 26, 2011, in the Southern District of New York and elsewhere, LACEY SCOTT, a/k/a "Collin Watson," the defendant, being an alien, after having been removed from the United States on or about August 29, 2006, unlawfully did enter and was found in the United States, without having obtained the express consent of the Attorney General of the United States or his successor, the Secretary for the Department of Homeland Security, to reapply for admission, and did so subsequent to a conviction for the commission of an aggravated felony.

(Title 8, United States Code, Sections 1326(a) & (b)(2).)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

- 2 -

**A. 14**

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

LACEY SCOTT,
a/k/a "Collin Watson,"

Defendant.

### INDICTMENT

S1 12 Cr. 154

(8 U.S.C. § 1326(a) & (b)(2), 18 U.S.C. §
922(g)(1).)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

_Thie Welr_ 5/1/13

Foreperson.

5/1/13 Filed . Indictmht

Copy USnY

A. 15

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA

4               v.                          12 Cr. 154 (RJS)

5   LACEY SCOTT,
                                            Sentence
6               Defendant.

7   ------------------------------x

8                                           New York, N.Y.
                                            October 4, 2013
9                                           4:20 p.m.

10  Before:

11          HON. RICHARD J. SULLIVAN

12                                          District Judge

13
            APPEARANCES
14

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    IAN P. MCGINLEY
17       Assistant United States Attorney

18
    NICHOLAS SCHRETZMAN
19  KELLY ANNE MOORE
         Attorneys for Defendant
20

21

22

23

24

25

```
1        (Case called)

2        THE CLERK:  For the government?

3        MR. McGINLEY:  Good afternoon, your Honor.  Ian

4   McGinley for the government.  With me is Special Agent Todd

5   Kowalski from the Department of Homeland Security violent gang

6   unit.

7        THE COURT:  Mr. McGinley, Mr. Kowalski, good

8   afternoon.

9        For the defendant?

10       MR. SCHRETZMAN:  Nick Schretzman, your Honor, with

11  Kelly Moore.

12       THE COURT:  Mr. Schretzman, Ms. Moore, good afternoon.

13  Mr. Scott, good afternoon to you.  There are some friends and

14  family members here as well, Mr. Schretzman, is that right?

15       MR. SCHRETZMAN:  Yes, your Honor.  We have members of

16  the defense team and family members of Mr. Scott.

17       THE COURT:  Welcome to everyone.  I'm sure your

18  presence means a great deal to Mr. Scott.  And for those of you

19  who have worked on this matter, thank you for your efforts.

20       We are here for sentencing.  Mr. Scott pled guilty

21  before me to one count and had a trial on stipulated facts to

22  the other count.  That took place on May 13th of this year.  I

23  want to go over with the parties what I have reviewed in

24  connection with sentencing.  If I have left anything out, you

25  should let me know.
```

1          In addition to reviewing the order that I issued with

2     respect to the immigration count, I have also reviewed the

3     transcript of the guilty plea proceeding.  I presided over it,

4     but I think it is a good thing to review it, so I have done

5     that.

6          I have also reviewed a number of materials that have

7     been submitted, including the pre-sentence report which the

8     probation department prepared, and it is dated September 27th

9     and includes a recommendation.  It is a 20-page single-spaced

10    submission.

11         I have also reviewed Mr. Schretzman's submission,

12    which is quite lengthy and very thorough.  It is a 16-page

13    double-spaced submission with multiple attachments, including

14    many, many letters from friends and family members, people who

15    know Mr. Scott well, some attachments as well in the nature of

16    certificates and scores and evaluations.  I have read all of

17    it.  Thank you.  It is very thorough and very useful.

18         Then I have reviewed also the government's sentencing

19    memorandum, which is dated September 27th.  It is a 9-page

20    double-spaced submission.  I also have one letter that was

21    submitted to me directly dated August 6th from Rashad Grannell,

22    which I'm not sure if others have seen.

23         MR. SCHRETZMAN:  Sorry about that, your Honor.  We

24    asked that they all be sent to us.

25         THE COURT:  It is a short letter.  It talks about Mr.

1    Grannell's relationship with Mr. Scott.  I can give it to you

2    if you would like to see it.

3         MR. SCHRETZMAN:  Your Honor, I think we have a copy

4    it.  I think we may even have submitted it.

5         THE COURT:  It may have been submitted.  I read these

6    and read them again to make sure I haven't forgotten anything.

7    It could be that this was one that was both sent to me directly

8    and sent to you.  But I have read it.  It is a moving letter

9    and a thoughtful letter.

10        The government is asking me to sentence Mr. Scott

11   above the sentencing guidelines range, correct, Mr. McGinley?

12        MR. McGINLEY:  That's correct, your Honor.

13        THE COURT:  That is a relative rarity.  It doesn't

14   happen that much.  It's not unheard of, but it doesn't happen

15   that much.  The government has set forth its reasons for that.

16        That is what I have reviewed in connection with

17   sentence.  Is there anything else I have missed?

18        MS. MOORE:  No, your Honor.

19        MR. McGINLEY:  Nothing else from the government.

20        THE COURT:  Let's begin with the pre-sentence report.

21   Mr. Schretzman, you have received a copy of the pre-sentence

22   report and reviewed it with your client?

23        MR. SCHRETZMAN:  Yes, your Honor.

24        THE COURT:  Do you have any objections to it?

25        MR. SCHRETZMAN:  No, your Honor.

1          THE COURT:  Mr. McGinley, you have received a copy as

2     well?

3          MR. McGINLEY:  Yes, your Honor.

4          THE COURT:  Do you have any objections to what is in

5     the pre-sentence report?

6          MR. McGINLEY:  Yes, your Honor.  As noted on the

7     pre-sentence report, the government has calculated a different

8     guidelines range.

9          THE COURT:  Right.  You still stand by that?

10         MR. McGINLEY:  We stand by that, your Honor.  I am

11    prepared to talk on that if your Honor would like.

12         THE COURT:  We will get to that in a minute.  I'll go

13    through the guidelines in a bit.

14         MR. McGINLEY:  Very good.  As to anything else in the

15    report, I don't think it is worthy of a formal objection, but I

16    just wanted to put out that paragraph 62 talks a little bit

17    about who the defendant lived with when he entered the United

18    States.  That issue could potentially be in dispute if the

19    illegal reentry charge is somehow overturned.

20         I don't know if your Honor recalls, in your opinion we

21    tabled the issue of custody.  The government wouldn't adopt any

22    of the defendant's characterizations of who he lived with when

23    he entered the United States.

24         THE COURT:  That's a good point.  I don't think it

25    will affect my sentence, but it could be a disputed fact down

1    the road.  I will not resolve that today.

2           Let's start with the sentencing guidelines.  Mr.

3    Scott, you may remember when you pled guilty I told you about

4    the sentencing guidelines and how they apply generally in the

5    case.  For those who weren't here, there is a book, it's a big

6    book, put out by the commission called the United States

7    Sentencing Commission.  It is a group of judges and lawyers and

8    others who prepare this book that is designed to help judges

9    fashion an appropriate sentence.  Every judge is required to

10   take a look at that book in connection with the sentencing.

11   They are not mandatory, I don't have to follow them, but do I

12   have to consider them.  So that's what I have done.

13          The way it works is that for every crime or type of

14   crime there is a chapter in the book, and the judge is directed

15   to go to that chapter, make certain factual findings, and then

16   on the basis of those findings assign points, sometimes adding,

17   sometimes subtracting.  That is a process that the judge goes

18   through and comes up with a number.  That number is referred to

19   as the offense level.  I see Mr. Scott is nodding.  I know he

20   remembers this.

21          Then the judge does another calculation with respect

22   to what is called the criminal history category.  There is a

23   separate chapter of the book that relates to criminal history.

24   Not surprisingly, people with prior convictions, people who

25   have previously gone to jail for crimes, will be treated more

1   harshly than people who have no prior convictions and no prior

2   experience in the criminal justice system.

3            A judge is directed to make findings about whether

4   there were prior convictions, and if so when, what for, for

5   what length of sentence.  On the basis of those findings, the

6   judge determines which of six criminal history categories

7   apply.  There are six.  Level I is the lowest.  Level VI is the

8   highest and most serious.

9            Once the judge has made these findings about the

10  offense level and criminal history category, the judge goes

11  back to the back of the book where there is a grid, tracks down

12  the column which is the offense level and goes across the rows

13  to find the proper criminal history category.  Where the two

14  intersect is the range that, in the view of the commission that

15  prepared the report, is appropriate.  We will spend a few

16  minutes reviewing that.  Ultimately, I am free to go higher or

17  lower.

18           The probation's report sets forth the probation

19  department's view of the guidelines, starting at page 7.  It

20  finishes on page 11.  There is an objection.  Mr. McGinley,

21  let's have you articulate again your objection.

22           MR. McGINLEY:  Yes, your Honor.  The relevant

23  guideline, and this is 4A1.2(a)(2), says, "Prior sentences are

24  counted separately if the sentences were imposed for offenses

25  that were separated by an intervening arrest."

1          His previous conviction in the Southern District is

2   what is at stake there, your Honor.  In that case he was

3   initially charged off an arrest.  The first arrest, your Honor,

4   was August 22, 2013.  This is on page 58 of the pre-sentence

5   report.

6          THE COURT:  On page what?  Paragraph.

7          MR. McGINLEY:  Paragraph, I'm sorry.  Paragraph 58,

8   August 22, 2003.  That was the first arrest.  That was part of

9   the indictment that he eventually pled to.

10         I have the docket sheet from that case.  He was

11  charged with the offense resulting from that arrest on June 22,

12  2004, before Judge McMahon.  While he was bailed on that

13  charge, he was again arrested months later, September 1, 2004,

14  by the New York City Police Department for a totally separate

15  offense, a totally different gun, a different set of facts,

16  including drug possession.  That is paragraph 59 of the PSR,

17  your Honor.

18         He eventually pled to a three-count superseding

19  information before Judge McMahon, which encapsulated both of

20  those arrests.

21         THE COURT:  So there was an intervening arrest, is

22  your point?

23         MR. McGINLEY:  Correct, your Honor.

24         THE COURT:  And that makes all the difference?

25         MR. McGINLEY:  We expressed that to probation.  I

1  don't know whether they missed the second arrest. I asked them

2  if they could point me in the direction of their authority for

3  their view. They did not. But I think under the guidelines it

4  is pretty clear that when there is an intervening arrest, even

5  if the indictment includes both arrests, it is still separate

6  offenses counted separately under the guidelines.

7          THE COURT: I think that is an accurate reading of the

8  guidelines. Is there a factual dispute as to whether there was

9  an intervening arrest?

10         MS. MOORE: Your Honor, probation addresses Mr.

11 McGinley's comments to them in paragraph 81. They take the

12 view that there was no intervening arrest to support. So it is

13 not as if they were not mindful of his objection. They took a

14 look at it and stood by their original calculation.

15         THE COURT: Probation is saying there wasn't an

16 intervening arrest. The government is saying there was an

17 intervening arrest. I'm not sure how I am to resolve that at

18 this point, since I don't have much beyond what is in the

19 pre-sentence report. What is the basis for me concluding that

20 there was an intervening arrest, Mr. McGinley? If there was,

21 it seems to me clear that the guidelines would call for there

22 being additional criminal history points.

23         MR. McGINLEY: Your Honor, I can hand it the docket

24 sheet from his previous Southern District.

25         THE COURT: Does the docket sheet reflect it?

1       MR. McGINLEY:  The indictment.  The intervening arrest

2    was he was arrested August 22nd and charged with that crime.

3    There was then another arrest, in September, by a different

4    police department.

5       THE COURT:  That is reflected where?

6       MR. McGINLEY:  58 and 59 are what was the basis, your

7    Honor, for the conviction in paragraph 57.  You can glean that,

8    your Honor, from the PSR.

9       THE COURT:  Maybe I'm not as good at gleaning as you

10   are.  It is not clear to me where that is the case.

11      MR. McGINLEY:  You are probably better, your Honor.

12   On paragraph 57 it talks of the crimes.

13      THE COURT:  Possession of a firearm with an

14   obliterated serial number, possession and attempt to distribute

15   a controlled substance, possession of a firearm during drug

16   trafficking activity.

17      MR. McGINLEY:  Right.  Count One was August 22nd.

18      THE COURT:  According to the indictment.

19      MR. McGINLEY:  According to the indictment in that

20   case, which I have.

21      THE COURT:  August 22nd.  What is the date of the

22   others?

23      MR. McGINLEY:  The others were September 1st, your

24   Honor, while the defendant was on bail from the first charge.

25      THE COURT:  It doesn't tell me that there was an

1    intervening arrest.  It just tells me that's the day he

2    committed a crime, right?

3              MR. McGINLEY:  The arrest is reflected on 59, which

4    corresponds in the S2 that he pled to.

5              THE COURT:  I don't have the indictment for that case.

6    What you are telling me is Count Two references events on

7    September 1st.

8              MR. McGINLEY:  Counts Two and Three, your Honor.

9              THE COURT:  And paragraph 59 of the pre-sentence

10   report refers to an intervening arrest on September 1st.  I

11   guess I can connect the dots.  I don't know that I could have

12   without the indictment.

13             MR. McGINLEY:  I have it here, your Honor.  I have

14   copies for the Court.

15             THE COURT:  Is there a dispute about that?  Is there a

16   dispute that the indictment has three counts, one of which

17   relates to conduct that took place on August 22nd for which

18   there was an arrest and then the others of which relate to

19   conduct on September 1st, which were prompted by a separate

20   arrest described in paragraph 59?

21             MS. MOORE:  Your Honor, I haven't seen the indictment.

22   Candidly, we weren't even copied on the government's objection

23   to the probation officer, and it wasn't mentioned in the

24   government's sentencing submission.  I suspect that the

25   probation office, since they wrote paragraphs 58 and 59, could

1    have connected the dots, too.  But I'm not in a position to

2    argue it factually.

3           Given that, we would ask the Court to sentence Mr.

4    Scott well below 70 months.  I don't know how much it matters,

5    but I am not really in a position to adequately defend what

6    they did or didn't do.

7           THE COURT:  The difference would be one criminal

8    history category, right, Mr. McGinley?

9           MR. McGINLEY:  Right.

10          THE COURT:  It would be an additional 3 points.

11          MR. McGINLEY:  Which is what the plea agreement is.

12          THE COURT:  Right.  The range would be then, according

13   to the government?

14          MR. McGINLEY:  It would be 84 to 105 months, your

15   Honor.

16          THE COURT:  You agree with the math, Mr. Schretzman or

17   Ms. Moore?

18          MS. MOORE:  I do not agree with the math, your Honor.

19          THE COURT:  Probation, because they didn't connect the

20   dots or didn't think there was enough to connect the dots, they

21   are saying 70 to 87.  Let me take a look at the indictment.

22          MR. McGINLEY:  Your Honor, this is from the ECF.

23          THE COURT:  I think the fair inference -- and

24   certainly the standard here is preponderance of the evidence --

25   is that there was an additional arrest and that there should be

```
1   an additional three criminal history points, which then results

2   in the criminal history category being category V instead of

3   category IV.  I am not in my courtroom, so I don't have my

4   guidelines.  I can get them.  What is the range that you are

5   saying, Mr. McGinley?

6           MR. McGINLEY:  Your Honor, that is the range in the

7   plea agreement signed by all the parties, and that is 84 to 105

8   months.  That would be criminal history category VI and offense

9   level 22.

10          THE COURT:  Category VI?

11          MR. McGINLEY:  Correct.

12          THE COURT:  Because it is the three points?

13          MR. McGINLEY:  No.  I'm sorry.  I was looking at the

14  wrong one.  V, your Honor.  I'm sorry.

15          THE COURT:  I think that is what is supported by the

16  facts, so that is going to be my finding.  In all other

17  respects I adopt the pre-sentence report in its guidelines

18  calculation.  It is only criminal history category that is

19  different, and it seems to me that the range is 84 to 105.

20          Does anybody wish to be heard with respect to the

21  guidelines beyond what we have discussed?

22          MS. MOORE:  No, your Honor.

23          THE COURT:  That is only one factor, Mr. Scott.  I

24  told you there were other factors that a court has to consider.

25  Those factors include the person history of the defendant as
```

Da4rscos                                                                14

1  well as the characteristics of the crime, the facts and

2  circumstances of the crime.  The Court has to impose a sentence

3  that is going to reflect the seriousness of the crime, that is

4  going to impose just punishment for the crime, and that is

5  going to promote respect for the law.

6          Another factor the court has to consider is the need

7  to deter criminal conduct in the future, criminal conduct by an

8  individual defendant but also by others who might learn of the

9  sentence that was imposed in a particular case, and realize,

10  one, that is pretty serious, I'm not going to commit any crimes

11  because I saw what happened in another case.  It is hard to

12  know exactly what message people will take from a sentencing,

13  but Congress has said that is a legitimate concern and

14  consideration and courts should take it into account, so I

15  will.

16          Other factors include your own needs while you were in

17  custody, including medical needs.  You obviously have some

18  medical needs that have to be addressed.

19          Other factors include the need to avoid unwarranted

20  sentencing disparity between your sentence and the sentence of

21  others similarly situated people, which is just sort of a fancy

22  way of saying that there needs to be some rough equality where

23  two defendants are roughly the same.  No one is identical, no

24  one is ever exactly the same.  But roughly the same, then the

25  sentence should be roughly the same or certainly comparable.

1    The court should take that into account as well.  Those are the

2    things I have to consider.

3         Your lawyer and the government's lawyer have made

4    sentencing submissions that talk about some of those issues.  I

5    am going to now turn it over to the lawyers to give them a

6    chance to speak a little more about this subject.  I will hear

7    from your counsel, then I will hear from the government.  Once

8    I have heard from them, then I am happy to hear from you if you

9    would like.  You don't have to speak, you don't have to address

10   the Court, but you have a right to and you would be very

11   welcome to.

12        Mr. Schretzman, you are carrying the ball for your

13   team?

14        MR. SCHRETZMAN:  Yes, your Honor.  Do you mind if I

15   speak from the podium?

16        THE COURT:  That's fine.  Just keep your voice up.

17        MR. SCHRETZMAN:  As we just discussed, your Honor,

18   probation recommended a sentence at the lowest end of the

19   guidelines that they believe to be applicable.  The government

20   is seeking a sentence above the guidelines.

21        We think it is clear from our submissions and from

22   that fact that those who come and spend time with Mr. Scott and

23   get to know him come away with a very different impression of

24   who he is than what the government's impression is of him.

25   Those who come to know him include his entire defense team here

Case 13-3945, Document 43, 11/20/2014, 1375345, Page54 of 82

1   today, friends and family who wrote letters to your Honor on

2   his behalf, some of whom are also here today, as well as even

3   the probation officer, who spent hours with him at the MDC and

4   we believe clearly came away with a favorable impression of

5   him.

6          I would like to make two brief points about the PSR

7   and then speak to those characteristics that I have come to

8   know about Mr. Scott over the years, year and eight months now.

9          The first point we note is that probation was aware of

10  and referenced many of the reasons listed in the government's

11  submission, articulating why the government believes that Mr.

12  Scott should be sentenced above the guidelines.  Probation

13  itself was not persuaded, recommending a sentence at the low

14  end of the guidelines that they believe to be applicable, 70

15  months.

16         Probation made that recommendation without reference

17  to or apparently taking into account that section of the

18  guidelines which we referenced in our submission which

19  recommends leniency for defendants, such as Mr. Scott, who face

20  an illegal reentry charged but were raised in this country from

21  early childhood to adulthood, assimilated into this culture,

22  were subsequently deported and came back, their primary

23  motivation being that they consider this country to be their

24  only home.  I think Mr. Scott is in that situation, and that is

25  a reason to sentence him below the guidelines and below what

Case 13-3945, Document 43, 11/20/2014, 1375345, Page55 of 82

1    probation recommended.

2         As to the man I have personally come to know, since

3    early 2012 I think the most telling thing I can say about him

4    is that throughout the course of my representation, from that

5    first day until yesterday, I have always looked forward to

6    seeing him at the MDC, which is no small thing, given where the

7    MDC is, how hard it is to get there, and what it is like when

8    you are inside.  It is particularly no small thing because Mr.

9    Scott was extremely involved in his defense, which required a

10   lot of visits to see him.

11        What we found when we met him was a hilariously funny,

12   charming, charismatic, and caring individual.  When Ms. Moore

13   or myself couldn't make it to a particular meeting, he would

14   always ask how the other was doing, make sure to say hi to

15   Kelly.  He on his own dug up excellent theories and case law in

16   his independent research into the issues, which we then ran

17   with.  I was consistently surprised by the depth of his

18   intellect and his relentless good humor.

19        In contrast, I was not at all surprised at the way he

20   was described in the letters to your Honor by his friends and

21   family.  I would highlight a few statements made in those

22   letters, two of them made by individuals here today and which

23   speak to the core of Mr. Scott's character.

24        First off, Mr. Scott's friend Mitchell, who is here in

25   the courtroom today, wrote that Mr. Scott is all about respect

1    and loyalty and putting others ahead of himself.  He credits

2    Mr. Scott with saving his life when he was shot five times in

3    their neighborhood.

4            Another friend of Mr. Scott's, Kareem Jones, also in

5    the courtroom today, wrote that Mr. Scott is a great family man

6    and father, ready to do better and leave the system, never to

7    return again.

8            THE COURT:  I read the letters, and they were moving

9    letters.  The fact is he is back in the system again, and not

10   just for illegal reentry but for possessing a gun having been

11   convicted of serious crimes before Judge McMahon not very long

12   ago.  What is there to suggest that he is not going to be back

13   in the system again?

14           MR. SCHRETZMAN:  I appreciate that, your Honor.

15           THE COURT:  We are in criminal history category V

16   here.  It is a long history.  It is not limited to just one or

17   two things.

18           MR. SCHRETZMAN:  I would like to highlight a few of

19   Mr. Scott's accomplishment while he has been in prison, which I

20   think will speak to his trying to turn his life around and

21   chart a better course for himself.  The most glaring

22   accomplishment I think was his successful marriage proposal to

23   his long-time girlfriend, who lives in California but plans to

24   spend her life with Mr. Scott and who clearly sees something in

25   his character that the rest of us have seen.

1        He also earned his GED, a particular point of pride,

2    scored in the 93rd percentile in reading, 96th percentile in

3    science.  He worked hard as an orderly.  Received stellar

4    reviews, all five in every category.  He took courses and

5    earned certificates in leadership and real estate.  He wrote

6    two novels.  We have only seen the first one, it is 180 pages,

7    meticulously handwritten.  It is hilarious, page-turning,

8    action-packed.  We all look forward to the sequel.

9        We believe that his hard work and study under the

10    enormous strain of a federal prosecution while incarcerated and

11    then awaiting trial speaks to the fact that he is committed to

12    turning his life around.

13        I would also point to a few more snippets of letters,

14    just two, that I think speak to his character.  His younger

15    sister writes that she gives large credit to her older brother

16    for pushing her in the direction where she could succeed.  She

17    gives him large credit for her academic success.  She said that

18    he cares for her going right, "takes time out of every time we

19    talk to remind me that education goes a long way in life."

20        Mr. Scott's cousin finally proudly wrote that he was a

21    24-year-old college graduate, majored in criminal justice,

22    ended school with a 3.5 gradepoint average.  He wrote, "My

23    quest for knowledge and work ethic was taught to me by Lacey."

24    That is the refrain occurring throughout the letters.  Whenever

25    we speak to him, he speaks with most pride about his children

1    and about the younger generation of his family and their

2    successes.  He considers their successes his own.

3            The government's suggests in its submission that Mr.

4    Scott casts a blame around him like a shadow, always on others,

5    never on himself.  That has never been the case with us.  We

6    have never seen that.  During our representation he has never

7    once made excuses, never once complained.  I remember when your

8    Honor ruled from the bench in favor of the government with

9    respect to Mr. Scott's motion to suppress, I sat down

10   dejectedly, and it was Mr. Scott leaning over to me to reassure

11   me to thank us for our hard work.

12           Again, in the acknowledgments, in his first book he

13   wrote he thanks his family and his friends and he sends love to

14   those who have passed away.  He writes, "Special thanks to my

15   lawyers Kelly Anne Moore and Nicholas Schretzman for fighting

16   for me with all they've got."  Mr. Scott's friend wrote in her

17   letter to the Court that whenever his name comes up smiles

18   spread cross the faces of those who know him.  Your Honor, that

19   is the man we know who sits before you today.

20           Given the fact that two years on Rikers Island and the

21   MDC is in and of itself a substantial punishment, given that he

22   has been walled off from his family and friends, in light of

23   the fact that the seriousness of the reentry charge may be

24   mitigated by the fact that he was returning home to the place

25   where he was raised, and in light of the fact at his core he

1  is, in our estimation, a wise and caring man who has suffered

2  significantly in prison and does have much to offer both

3  society and his family, we ask that you sentence him leniently

4  today.

5        THE COURT:  Thank you, Mr. Schretzman.

6        I gather Mr. McGinley has a very different view, which

7  probably is in many ways equally based in the record.  Go

8  ahead, Mr. McGinley.  I am happy to hear from you.

9        MR. McGINLEY:  Thank you, your Honor.  As your Honor

10  recognized when we began, the government is seeking an above-

11  guidelines sentence here.  That is not something we do lightly.

12  That had to be approved by the division chiefs as well as the

13  head of the criminal division itself.  There are many reasons,

14  which I would like to go through, for why the government

15  believes that is appropriate.

16        First off, your Honor, this is not a case where your

17  Honor doesn't have a data point of how the defendant responds

18  to a sentence for a gun crime in this same district.  He was

19  sentenced by Judge McMahon to 87 months in prison for

20  possessing two guns and one in furtherance of crack dealing.

21  That was in 2005.  He then turns around a few years later,

22  about seven years later, and he is doing essentially almost to

23  a T the exact same thing.  In fact, in his prison calls when he

24  is talking to his acquaintances, he says this is deja vu, this

25  is happening all over again.

1          Your Honor, the reason he is saying that, and this is

2    noted in the paragraphs that we looked at in the pre-sentence

3    report about his previous arrests, paragraph 59 of the PSR, his

4    previous arrest September 1, 2004, was by the NYPD in the same

5    area of the Bronx. He's in a car. They find a gun in the car.

6    He takes off running. This time he made it for I believe it

7    was about a day before he was found. He takes off running,

8    gets away. He is caught and, incredibly, as he did in this

9    case, he tells the police, I was just there getting Jamaican

10   food, the exact same thing he is saying when he gets arrested

11   in this case.

12         87 months, your Honor, was not enough. I think that

13   that is quite clear in the record. With that sentence, he is

14   back doing the same conduct in the same area with the same

15   excuse.

16         Your Honor, another reason for an above-guidelines

17   sentence here is the guidelines do not provide for enhancements

18   for a lot of the bad acts the defendant conducted incident to

19   his arrest on the gun possession case here. It is clear from

20   the prison calls he was telling the driver of the car, Damian

21   Cunningham, to keep driving, he didn't want the car to stop.

22   That in itself obviously creates a very dangerous situation.

23         When he is then stopped, he gives the police a fake

24   name, Colin Watson. Colin Watson is a former basketball star

25   from Mount Vernon, incidentally. He uses that name, and then

1    he has a drivers license from California underneath the name

2    Colin Watson which he provides to the police.

3           Then, when the gun is found, he takes off running

4    through people's backyards, through streets.  He is ultimately

5    arrested thanks to incredible police work by an officer who

6    commandeered a delivery man's bike and was able to catch up to

7    Mr. Scott.

8           He was then arrested, your Honor.  He goes back to the

9    Bronx DA's office.  In a recorded statement he gives the name

10   Colin Watson again.  He again says he was just with his taxi

11   buddy Damian Cunningham.  When he is asked point blank about

12   the gun, he says, ma'am, I don't know anything about the gun,

13   that's the first I've ever heard of it.  This is post-Miranda

14   back at the DA's office.

15          A lot of those acts, your Honor, may be state crimes,

16   but they do not provide for enhancements under the guidelines.

17   And I think they are very relevant 3553(a) factors that your

18   Honor should consider, particularly the danger to the officers

19   and the public that he caused.

20          I cannot overstate, your Honor, how disturbing his

21   prison calls are, especially when he is in Rikers Island.  I

22   think defense counsel pointed out something that the defendant

23   is charismatic, he is savvy, and that is all true.  And I think

24   that is part of what makes him so dangerous.

25          There is also a totally different side to him that you

Da4rscos                                                          24

1   see in these prison calls.  He is talking about guns.  He is

2   calling Damian Cunningham, telling him that the gun is clean so

3   he can take the rap for it.  Then he is talking about how weak

4   he thinks other people are.  In one startling call he goes,

5   "Niggas talk murder, death, kill; when it comes to police, they

6   freeze.  I don't freeze, B, I don't know about freezing."

7          In other calls he boasts about the time he is looking

8   at in this case.  He says he can do 5 years standing on his

9   neck.

10         There are other times, your Honor.  I found it ironic

11  that defense counsel said, after your Honor's rulings on the

12  suppression motion in this case, that Mr. Scott was not the one

13  dejected because in his calls after that he said that the Court

14  was pro-government and that's what led to that decision, and

15  things of that nature, your Honor.  Again, it is always about

16  other people doing wrong and not himself.

17         A few other very quick points, your Honor, because I

18  don't want to just reiterate what is in the sentencing

19  submission.

20         The affidavit in this case is entirely misleading in

21  that it tries to perpetuate the lie that he had just hired a

22  taxi driver that night to get Jamaican food.  That was an

23  affidavit submitted under oath actually twice to this Court.

24  One time they changed the affidavit to create a factual issue

25  for the suppression motion.

1          While we are not seeking enhancement points under

2     that, I do think it is a very relevant factor because it shows

3     for how long the defendant has denied responsibility for his

4     crimes and the lack of remorse.  Up until a month from trial,

5     when his back is against the wall, that's when he accepts

6     responsibility.  He may well have done well in other respects

7     at the MDC, your Honor, but he was also disciplined there for

8     doing drugs and received a pretty significant discipline there.

9          Your Honor, I think what we have here is a hardened

10    criminal who is habitually around guns.  He relishes in the

11    criminal lifestyle.  He even has a tattoo, this is paragraph 68

12    of the PSR, of the Grim Reaper holding a gun on his right

13    forearm.  The tattoo says, "Pain and pressure is pleasure to a

14    warrior like me."  Your Honor, that is the Lacey Scott you hear

15    on his prison calls and that is the Lacey Scott who pled guilty

16    to these crimes.

17         For these reasons, your Honor, the government submits

18    that a sentence above the guidelines is appropriate both to

19    protect the public, to send a message to others, and also to

20    account for the seriousness of this offense, a lot of which I

21    believe is not accounted for under the applicable guideline

22    range.

23         THE COURT:  Thank you.

24         Mr. Scott, as I said, you have a right to address the

25    Court.  You are not required to, but you are certainly welcome

1   to.   Is there anything you would like to say?

2          THE DEFENDANT:  First and foremost, I would like to

3   apologize to my family, my friends.  I know they are in the

4   situation as much as me.  I know what I did was wrong.  I

5   account for everything I did.  I know it was wrong.  I'm not

6   blaming anybody else, like the government is talking about.  I

7   blame myself.

8          This situation, Jamaica is a different place.  You

9   might not know, but I couldn't really stay there because of

10  what was going on with my family members.  So I rather had left

11  there.  Plus, my sons was out there.  We both hungry in

12  Jamaica.  I don't know what to do.  All I know is America.  I

13  just felt like coming back here was the best situation for me.

14          I went to California.  I was doing odd jobs.  Nothing

15  was happening for me there.  I came back to New York, working

16  in a barbershop.  I did get caught up in a situation that I

17  blame myself.  I should have been distant from that situation,

18  from these kind of people.  But I got caught up in that

19  situation.

20          All I can say is I'm deeply story.  I don't know what

21  else to say.  I know I was wrong.  All I worry about is my two

22  kids right now.  That's it.  I know you've got to sentence me

23  like you said accordingly, but I just want to get back to my

24  kids as soon as possible and take care of them.  That's it,

25  your Honor.

1         THE COURT:  Thank you, Mr. Scott.

2         I think we may need to take a short break.  I have a

3    jury out and I need to excuse them.  One of my jurors, at least

4    one, is a sabbath observer so he needs to go.  I apologize for

5    that.  In the meantime, I am going to think about what

6    everybody has said here.  When we come back, it will probably

7    be in about ten minutes or so, I will then tell you the

8    sentence I intend to impose and give my reasons for it.  Thank

9    you.

10        (Recess)

11        THE COURT:  I apologize for the delay.  It is always

12   tricky when there is a jury out.  You never quite know when

13   things are going to happen.  It's late in the day, and I know

14   all of you have been waiting patiently.  Thank you.

15        Mr. Scott, as I told you before, I will tell you the

16   sentence that I intend to impose and my reasons for it.  Once I

17   have done that, I will ask the lawyers if I have made a

18   mistake, if there is some legal impediment to my imposing that

19   sentence.  There usually isn't, but I always ask just to make

20   sure, so I will do that here again.  Assuming there is no

21   impediment, then I will formally impose the sentence.

22        I found this to be a very difficult case.  This is a

23   situation where there are two wildly different portrayals of

24   this man.  On the one hand, I have an individual who is

25   described as and I think clearly is smart, thoughtful, capable

1    of great kindness, capable of great generosity, someone who has

2    made an impression and a meaningful impression on people, a

3    deep impression on people.  The letters attest to that

4    certainly.

5         Even Mr. Scott's representatives talk about him in a

6    way that is rare, candidly, to hear lawyers talk about their

7    clients.  I credit that.  This is a very intelligent person.

8    The record reflects that.  He is a person with I think great

9    capacity to do really productive things.  The fact that he has

10   artistic ability on top suggests to me that there is much that

11   Mr. Scott can offer, much that he will offer, much that he will

12   contribute.  I credit that.  I take that as a given.

13        I am also mindful of the fact that whatever sentence I

14   impose, the time that Mr. Scott has already been in jail has

15   been a real hardship for his family.  People are clearly

16   suffering with him and for him.  Some of them are not here

17   today, but many have written letters, and they describe how

18   much they are hurting from the separation.  Mr. Scott also

19   talks about that eloquently.  It is not lost on me.  I am

20   always mindful that every time I sentence an individual person,

21   there is a family and there are others who are affected by that

22   sentence.  I wish that weren't true, but it is almost always

23   the case.

24        It is one of the collateral consequences of the human

25   condition that punishing one person for bad conduct and bad

1  judgment often has the unfortunate consequence of hurting

2  others, innocent people, people who deserve much better, people

3  who did nothing wrong.  The children are often the worst

4  victims of that.  I wish there was something I could do to

5  change it.  Sadly, there isn't.  In this case it is not really

6  unique.  I am mindful of it just so you understand it is not

7  something I just dismiss.  It is certainly something I think

8  about.

9           That is the positive Mr. Scott who has done well, who

10 has gotten outstandings on all his work in jail, who has done

11 well on his scholastic aptitude tests and done well in so many

12 ways.

13          But then there is the other Mr. Scott, who seems to

14 have tremendous difficulty staying out of the world of guns and

15 out of a world of crime.  This is a situation where we are not

16 just talking about one mistake in the past or an immigration

17 offense that was motivated by a desire to be back in the United

18 States.

19          I see a lot of people who come back to the United

20 States because this is what they consider home and where their

21 life is and where they want to make their future.  I understand

22 that.  It doesn't make it OK, it is not a defense, but it is

23 certainly understandable.  But most of them don't go running

24 around with guns in there are cars, particularly after they had

25 serious gun offenses in the past.  That is something that makes

1   this case different.

2          This is a case in which another judge in this very

3   courthouse previously imposed a really significant sentence.

4   One would have thought that that would be enough to drive

5   someone out of this kind of criminal behavior.  Even putting

6   aside the immigration offense, just the criminal behavior of

7   guns.  But it didn't do that.  It was an 87-month sentence.

8   That's almost 7½ years, a little over 7 years.  That did not

9   have the effect that it should have had.  So here we are again

10  with guidelines now that are much higher.  The range that I

11  have already found is 84 to 105 months.  The government is

12  asking for even above that.

13         I tell you, this is a hard one.  I keep thinking what

14  is it going to take for Mr. Scott to get the message and what

15  is it going to take to signal society's outrage at this kind of

16  criminal behavior?  Because that is part of what a criminal

17  sentence is:  What is it going to take to promote respect for

18  the law?

19         Every one of these crimes is an assault really against

20  the law and against a civil society that is built on law.  That

21  is what makes this a country that people want to come to.  It

22  is a society in which rights are respected, laws are respected,

23  and there is the opportunity to pursue one's dreams and to

24  pursue an occupation without being the victim of a crime.

25  That's because people generally respect the law here.  That's a

1    good thing.

2          From the way you have described Jamaica, it sounds

3    like that is less of a civil society.  I will take your word

4    for it.  But I think it is less of a civil society because

5    people have less respect for law.  The sentence I impose needs

6    to encourage respect for law, promote respect for law.

7          It really is a conundrum.  I have gone back and forth

8    on this one.  It is rare that I get a sentencing submission

9    that I got here.  It is rare that I have a lawyer saying what

10   Mr. Schretzman has said.  It is rare that I get so many

11   eloquent letters.  But it is also rare that I get the U.S.

12   Attorney's office arguing for an above-guideline sentence.

13   That is quite rare.  It is rare that I have phonecalls and

14   other indicia of somebody being pretty callous and pretty

15   hardened at this point.

16          I don't know that it is a good bet that Mr. Scott is

17   not going to commit more crimes in the future.  I hope he is

18   sincere and able to follow through on those words.  If you were

19   a betting man, you would have to hedge that bet because of the

20   past conduct.  I don't say that disrespectfully, but we have to

21   look at the past as some indication of what future behavior

22   there will be.

23          The more I have gone back and forth, the more I keep

24   coming back to the same place, and that is that a sentence of

25   9 years is appropriate here.  That is a long sentence.  That is

1    not lost on me.  But it is a sentence I think that is warranted

2    in light of this conduct, in light of the prior criminal

3    conduct, and in light of all the facts that have been discussed

4    by me and by the lawyers here today.  That is the sentence I

5    intend to impose.

6         That term will be followed by a term of supervised

7    release of 3 years on each of the counts.  The 9 years would be

8    concurrent on each count.  The supervised release would also be

9    concurrent of 3 years.  There would be terms and conditions

10   associated with it.  That is set forth in the pre-sentence

11   report.

12        I am not going to impose a fine.  I don't think that

13   Mr. Scott has the ability to pay a fine, and it wouldn't be

14   fair to his family.  I am going to order that he pay special

15   assessments of $200, 100 for each count of conviction.

16        The government is not seeking forfeiture or

17   restitution, right?  I missed that.

18        MR. McGINLEY:  We are not, your Honor, correct.

19        THE COURT:  That is the sentence I intend to impose.

20   Is there any legal impediment to my imposing such a sentence?

21        MR. McGINLEY:  No, your Honor.

22        THE COURT:  Mr. Scott, would you please stand.  Mr.

23   Scott, having accepted your guilty plea and presided over the

24   trial and stipulated facts, having found you guilty, I now

25   sentence you follows.  I sentence you to a term of

1    incarceration of 9 years on each count of conviction, to run

2    concurrently, to be followed by a term of supervised release of

3    3 years on each count, to run concurrently.

4         The term of supervised release will include the

5    following mandatory conditions:  That you not commit another

6    federal, state, or local crime, that you not illegally possess

7    a controlled substance, that you not possess a firearm or

8    destructive device of any kind -- I can't stress that enough --

9    that you shall cooperate in the collection of DNA as directed

10   by the probation officer.

11        In addition, there are standard conditions, 13 in all,

12   that are imposed in virtually every case involving supervised

13   release.  I am imposing those here.  I am also imposing the

14   following special conditions.  First, you will participate in a

15   program approved by the probation office which will include

16   testing to determine whether you have reverted to using drugs

17   or alcohol.

18        I will authorize the release of the evaluations and

19   reports prepared by the treatment provider and authorize that

20   they be shared with probation, and that probation also be able

21   to share information about drug tests and your successful

22   following of your probation conditions.  That should be shared

23   with your treatment provider as well, as deemed necessary by

24   probation.

25        In addition, I am going to order that you obey the

1    immigration laws and comply with the directives of the

2    immigration authorities.  I think there is a good chance you

3    will be deported again.  I don't know for sure.  You certainly

4    may be able to contest that, and within your legal rights you

5    can contest it.  But in other respects you are to comply with

6    the directives of the immigration officials.

7          You are to report to the nearest probation office

8    within 24 hours of your release from custody in the event you

9    aren't deported before then.  If you are released here, the

10   very next day I want you to go to the probation office.  Mr.

11   Scott's residence is in the Bronx, so he will be supervised in

12   Manhattan.  That is the office where you should go to.  It will

13   be down here probably in the courthouse at 500 Pearl street by

14   then.

15         I am not going to impose a fine, but I am going to

16   order a $100 special assessment on each of the counts.  That's

17   $200 in total.

18         Are there any recommendations you would like me to

19   make, Mr. Schretzman, about where to recommend Mr. Scott be

20   housed?

21         MR. SCHRETZMAN:  No, your Honor.

22         THE COURT:  All right.  I don't know whether there are

23   RDAP programs or other things that are worth pursuing.

24         MR. SCHRETZMAN:  Your Honor, Moshannon Valley in

25   Pennsylvania I think is an immigration jail.

```
 1              THE COURT:  The Bureau of Prisons, I'm not sure if

 2     they house incarcerated defendants there.  It is an immigration

 3     jail?  I don't know.  I will recommend that facility or

 4     someplace close to it.  Do you want to be close to the

 5     Northeast, is that the preference?

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  I will make that recommendation so your

 8     family can visit you as much as possible.  Mr. Schretzman,

 9     that's OK?

10              MR. SCHRETZMAN:  Your Honor, I think California would

11     be better for his fiancée.

12              THE COURT:  That's true.  Would that be better for

13     you, Mr. Scott?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Do you want me to say California or do you

16     want me to say the place in Pennsylvania?

17              THE DEFENDANT:  California will be good.

18              THE COURT:  Where in California, what city or part of

19     the state?

20              THE DEFENDANT:  Anywhere close to LA.

21              THE COURT:  I will ask that you be housed in a

22     facility as close as possible to the Los Angeles area so you

23     can be visited by loved ones and family.  I will make that

24     recommendation.  I can't promise it, I can't order it, but I

25     will make the recommendation in the strongest possible terms.
```

1          Are there open counts, Mr. McGinley?

2          MR. McGINLEY:  Yes, your Honor.  There is an

3    underlying indictment.  He pled to the S1.  The government

4    would move to dismiss any open counts.

5          THE COURT:  I will do that.  I will dismiss any open

6    counts.

7          I should advise you, Mr. Scott, you have a right to

8    appeal this sentence.  That may be something that you have

9    already discussed with your lawyers.  If you wish to file an

10   appeal, you would have to file a notice of appeal in two weeks,

11   probably two weeks from Monday, because I think I won't docket

12   the judgment until Monday.  You have two weeks.  Talk to your

13   lawyers about that, and they will assist you.  That is a pretty

14   firm deadline, so keep that in mind.

15         Mr. Scott, have a seat.

16         That may be more time than you were looking for.  It

17   probably is.  I know that is more than what your lawyers were

18   asking for.  My job is to call them the way I see them.

19   Sometimes that disappoints people, sometimes not.

20         But I meant what I said.  You strike me as a pretty

21   talented guy.  You are going to get out and you are going to

22   get out as a still relatively young man.  You have a lot of

23   talent.  I think you have a lot to offer.  My hope is this is

24   it for you.

25         Stay away from the things that dragged you into this.

1    Stay away from the people who are going to drag you into this.

2    You are more talented than most.  You really have a unique set

3    of talents and abilities and I would hate to see that wasted

4    with more of this kind of thing.

5            There are going to challenges, no doubt about it.  The

6    kind of separation we are talking about is very hard on

7    relationships.  You already know that.  But it doesn't mean

8    relationships have to end.  There is much you can do to build

9    those relationships even when you are separated from people who

10   care about you.  Those people need you, at least from the

11   letters I read.  There are an awful lot of people who really

12   need you.  Use letters and other means of communication to be a

13   factor in their lives.  My hunch is they are going to meet you

14   more than halfway because they do care about you.

15           I don't doubt you are disappointed, but certainly my

16   hope for you is that you have a life that is productive and

17   long and happy.  Candidly, I think you deserve that and I think

18   your family deserves that.  You have to pay the penalty for

19   what you have done.  You have made some missteps so far, but

20   the whole book hasn't been written here.  My hope is that at

21   the end of the day you can look back and say, I lived a life

22   that I can be proud of.  I think you are worth that.

23           Good luck.  Let me thank the lawyers, all of you.  You

24   contributed quite a bit.  It is rare that I get the quality of

25   lawyering that I got in this case.  It is a pleasure to have

1    good lawyers on both sides of the this case.  Thanks.

2            Let me thank the court reporter.  I thank those of you

3    who came here today to support Mr. Scott.  I am sure it means a

4    great deal to him.  Continue to support him.  He will need it

5    now more than ever.  Have a nice weekend and a good day.  Good

6    luck.

7            (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 1:12-cr-00154-RJS   Document 54   Filed 10/09/13   Page 1 of 5

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| Lacey Scott | Case Number:  12 Cr. 154 |
| | USM Number: 84098-054 |
| | Kelly Anne Moore / Nicholas Schretzman |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    1 and 2

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 922(g)(1) | Felon in possession of firearm | 12/26/2011 | 1 |
| 8 USC 1326(a) & (b)(2) | Illegal reentry following conviction of aggravated felony | | 2 |

     The defendant is sentenced as provided in pages 2 through     5     of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)   All counts from prior indictment   ☐ is   ☑ are   dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

10/4/2013
Date of Imposition of Judgment

Signature of Judge

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-9-13

Richard J. Sullivan      U.S.D.J.
Name of Judge         Title of Judge

10/7/2013
Date

Case 1:12-cr-00154-RJS   Document 54   Filed 10/09/13   Page 2 of 5

AO 245B   (Rev. 09/08) Judgment in Criminal Case
          Sheet 2 — Imprisonment

Judgment — Page  2  of  5

DEFENDANT:  Lacey Scott
CASE NUMBER:  12 Cr. 154

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

108 months (9 years) on Count One and 108 months (9 years) on Count Two, to run concurrently.

☑ The court makes the following recommendations to the Bureau of Prisons:

That the Bureau of Prisons make every effort to house Defendant as close to Los Angeles, California as possible.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.  on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A. 55

Case 1:12-cr-00154-RJS   Document 54   Filed 10/09/13   Page 3 of 5

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT: Lacey Scott
CASE NUMBER: 12 Cr. 154

Judgment—Page __3__ of __5__

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

3 years on Count One and 3 years on Count Two, to run concurrently.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

A. 56

Case 1:12-cr-00154-RJS   Document 54   Filed 10/09/13   Page 4 of 5

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
           Sheet 3C — Supervised Release

DEFENDANT: Lacey Scott                                    Judgment—Page ___4___ of ___5___
CASE NUMBER: 12 Cr. 154

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall participate in a program approved by the Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the probation officer. The defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

2. The defendant shall obey the immigration laws and comply with the directives of immigration authorities.

3. The defendant is to be supervised in the Southern District of New York.

4. The defendant shall report to the nearest probation office within 24 hours of release from imprisonment, unless the defendant is released on a weekend or holiday, in which case the defendant shall report to the Probation Office on the next business day.

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
          Sheet 5 --- Criminal Monetary Penalties

---

DEFENDANT:  Lacey Scott                                         Judgment — Page  5  of  5
CASE NUMBER:  12 Cr. 154

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 200.00 | $ 0.00 | $ 0.00 |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ 0.00 | $ 0.00 | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the   ☐  fine   ☐  restitution.

☐  the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

---

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Criminal Notice of Appeal - Form A

# NOTICE OF APPEAL

**United States District Court**

Southern _____ District of New York _____

```
┌─────────────────────────────┐
│  U.S. DISTRICT COURT        │
│        FILED                │
│   OCT 1 7 2013              │
│        D.S.                 │
│   S.D. OF N.Y.              │
└─────────────────────────────┘
```

Caption:

United States _____
                                v.

Lacey Scott _____

Docket No.: 12 Cr. 154 _____

Hon. Richard J. Sullivan _____

(District Court Judge)

Notice is hereby given that Lacey Scott _____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment [✔], other [✔] Order denying Motion to Dismiss; Guilty on Counts 1 and 2 (S1 12 Cr. 154)

entered in this action on 1/30/2013, 5/13/2013 and 5/14/2013 _____    (specify)

(date)

This appeal concerns: Conviction only [___    Sentence only [___]    Conviction & Sentence [✔    Other [___

Defendant found guilty by plea [✔ | trial [✔ | N/A [        .

Offense occurred after November 1, 1987? Yes [✔ ] No [        N/A [

Date of sentence: 10/09/2013 _____    N/A [___]

Bail/Jail Disposition: Committed [✔    Not committed [        | N/A [

Appellant is represented by counsel? Yes [✔ | No |    If yes, provide the following information:

Defendant's Counsel:   Kelly A. Moore and Nicholas Schretzman _____

Counsel's Address:   101 Park Avenue _____

New York, New York 10178 _____    .

Counsel's Phone:   212-309-6000 _____

Assistant U.S. Attorney:   P. Ian McGinley _____

AUSA's Address:   One Saint Andrew's Plaza _____

New York, New York 10007 _____

AUSA's Phone:   212-637-2257 _____

_____
Signature

**A. 59**